UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEBRA BECKER,

                                   Plaintiffs,

                     -against-

NASSAU BOCES SCHOOL DISTRICT;
BOARD OF COOPERATIVE EDUCATIONAL SERVICES
OF NASSAU COUNTY (NASSAU BOCES);
DR. ROBERT DILLON, Individually and as
District Superintendent of the Board of Cooperative
Educational Services of Nassau County;
DR. TRACEY NEKULAK, Individually, and as
Executive Director of Human Resources of the
Board of Cooperative Educational Services of Nassau
County; KIM SCHAROFF, Individually, and as Supervisor
1-Speech Language and Hearing Services at the
Board of Cooperative Educational Services of Nassau
County; PATRICIA SCHWETZ, Individually, and as
Assistant Director at the Board of Cooperative
Educational Services of Nassau County;
DR. RANDALL SOLOMON;
ISLAND PSYCHIATRY, PC; and
JOHN DOE AND JANE DOE # 1-100, said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

                              Defendants.
-------------------------------------------------------------X

**AMENDED**
**VERIFIED COMPLAINT**

Docket No.: 21-cv-02855 (EK) (ST)

**Plaintiff Demands a
Trial by Jury**

    Plaintiff, by her attorneys, the Law Offices of Thomas F. Liotti, LLC, for her Amended Complaint in this matter, respectfully alleges:

1

## BASIS FOR JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1441(a). Nassau BOCES Defendants sought removal of this matter which was originally commenced in the Supreme Court of the State of New York, County of Nassau bearing Index number 603315/2021, upon consent of all other Defendants. Plaintiff seeks relief, *inter alia*, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution. Specifically, Plaintiff's last cause of action alleges claims sounding in the violation of Plaintiff's due process rights. This case, therefore, falls within this Court's Federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, removal to this Court was granted, pursuant to 28 U.S.C. § 1441(a); together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising out of state law pursuant to 28 U.S.C. §1367(a).

## VENUE

2.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1).

3.      Plaintiff brings this action to redress harms caused to her by the Defendants as a result of their intentional disregard and violation of her rights.

4.      The amount in controversy greatly exceeds the amount required to sustain subject matter jurisdiction in this Court.

5.      Based on the foregoing, this Court has subject matter jurisdiction and may exercise supplemental and pendant jurisdiction of all related state-law based claims.

## JURY DEMAND

6.    Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Amended Complaint.

## NATURE OF THE CLAIM

7.    The Plaintiff seeks recovery for monetary damages for the harm caused to her reputation, livelihood, and career as an exceptional Speech and Hearing teacher of students with disabilities; additionally, for the defamation, discrimination, distress, suffering, mental, emotional, and physical anguish and humiliation, impairment of her ability to secure future employment, impairment of her earning power and embarrassment inflicted upon her due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants, particularly in deviating from the acceptable standards of review and investigation in accordance with the State Education Department and the Commissioner of Education; and negligently, improperly, and unprofessionally failing to expeditiously investigate obviously false, frivolous, retaliatory, unsubstantiated, and delusive allegations erroneously made against the Plaintiff; inappropriately placing her on administrative leave and inappropriately making her the subject of extensive, inappropriate, and unnecessary psychiatric examinations conducted by Dr. Randall Solomon, where she was, *inter alia,* erroneously deemed unfit to teach in a report submitted to Defendant by Dr. Solomon under the color of law, namely Section 913, and subjected to a disciplinary proceeding in accordance with Education Law Section 3020-a; and in causing her to be continuously denied employment as result of having to disclose the fact that she was the subject of a disciplinary proceeding. In sum, even though Plaintiff was

3

found not guilty of all charges, the stain of the fraud and deceit of Defendants remained in her personnel file.

<u>**PARTIES**</u>

8.      That at all times relevant herein and material hereto, the Plaintiff, DEBRA BECKER, ("Plaintiff" or "Ms. Becker"), was and still is a resident of the County of Suffolk, State of New York, and was employed with the BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY (Nassau BOCES), from 1989, as a Speech and Hearing teacher of students with disabilities. In or around 2008, she was assigned to the Nassau BOCES Carmen Road School, located at 1 Carmans Road, Massapequa Park, New York 11762.

9.      The Plaintiff holds various teaching licenses including a New York State Speech-Language Pathologist license.

10.     That at all times relevant herein and material hereto, the Defendant, NASSAU BOCES SCHOOL DISTRICT ("BOCES School District") was and is a municipal administrative, educational body, located in the County of Nassau, organized and existing and governed pursuant to the Education Law of the State of New York, with the power and authority to make and enforce rules and regulations and to appoint and hire employees for the administration, management, control, and security of the Board of Cooperative Educational Services of Nassau County's public schools located within Nassau County, New York, maintaining its principal office located at the George Farber Administrative Center, 71 Clinton Road, P.O. Box 9195, Garden City, New York, in Nassau County.

11.     That at all times relevant herein and material hereto, the Defendant, BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY ("Nassau BOCES") was and is municipal administrative, educational body, located in the County of Nassau,

organized and existing and governed pursuant to the Education Law of the State of New York, with the power and authority to make and enforce rules and regulations and to appoint and hire employees for the administration, management, control, and security of the Board of Cooperative Educational Services of Nassau County's public schools located within Nassau County, New York, maintaining its principal office at the George Farber Administrative Center, 71 Clinton Road, P.O. Box 9195, Garden City, New York, in Nassau County. Nassau County BOCES serves the 56 school districts of Nassau County, Long Island; it is the largest of the 37 BOCES in New York State.

12. That at all times relevant herein and material hereto, the Defendant, Nassau BOCES was and is duly licensed and authorized to do business in the State of New York and existing exclusively for educational purposes and the carrying out of the sovereign duty of the State of New York to provide public education, and is organized and exists exclusively for the purpose of carrying out a program of shared educational services and for providing instruction in such special subjects as the Commissioner of Education of the State of New York may approve in the public schools of the component school districts of the District, County, and in the public schools of those public school districts outside of District as may request the same.

13. That at all times relevant herein and material hereto, the Defendant, DR. ROBERT R. DILLION ("Defendant Dillion" or "Dr. Dillion") was and is a District Superintendent for Nassau BOCES in Nassau County, New York, and in addition to responsibilities as the BOCES agency's chief executive, he was and is acting as a regional representative for the New York State Commissioner of Education.

14. That at all times relevant herein and material hereto, the Defendant, DR. TRACEY NEKILAK ("Defendant Nekulak") was and still is an Executive Director of Human Resources at Nassau BOCES in Nassau County, New York.

15. That at all times relevant herein and material hereto, the Defendant, KIM SCHAROFF ("Defendant Scharoff") was and still is a Supervisor 1- of Speech Language and Hearing Services at Nassau BOCES in Nassau County, New York.

16. That at all times relevant herein and material hereto, the Defendant, PATRICIA SCHWETZ ("Defendant Schwetz") was and still is an Executive Director at Nassau BOCES in Nassau County, New York.

17. That at all times relevant herein and material hereto, the Defendant, DR. RANDALL SOLOMON ("Defendant Solomon" or "Dr. Solomon") was and is a practicing psychiatrist, and chairman and founder of ISLAND PSYCHIATRY, PC, with a location at 55 Nesconset Hwy., Suite 1, Port Jefferson Station, New York, in Suffolk County.

18. That at all times relevant herein and material hereto, the Defendant, DR. RANDALL SOLOMON was appointed by acted under the direction of, the Defendant, Nassau BOCES, pursuant to Section 913 of the New York State Education Law to evaluate the ability of the Plaintiff to perform her duties as a Speech and Hearing teacher of students with disabilities, and further in this regard, conducted an examination of the Plaintiff in his office in Port Jefferson Station, New York on February 24, 2016.

19. At all times relevant to the actions described herein, Dr. Solomon acted as an agent for the Defendant, Nassau BOCES, at the time of the unlawful practices. Dr. Solomon was unlawfully given authority under color of law to control the terms, conditions and privileges of Plaintiff's employment and qualified as agent of the Defendant, Nassau BOCES,

pursuant to Education Law Section 913. He aided and abetted in the fraud, deceit and discrimination against Plaintiff created by the Defendants and willingly participated in the decision-making process that forms the basis of the pattern and practice described herein to terminate Plaintiff and deny her the rights of her tenured position.

20. That at all times relevant herein and material hereto, the Defendant, ISLAND PSYCHIATRY, PC, ("Island Psychiatry") is a professional corporation, founded and operated by the Defendant, DR. RANDALL SOLOMON, and is duly licensed and authorized to do business in the State of New York, with a location at 55 Nesconset Hwy., Suite 1, Port Jefferson Station, New York, in Suffolk County.

21. At this time, the Plaintiff does not know the true names of the Defendants, JOHN DOE AND JANE DOE # 1-100, inclusive, and therefore initiate this legal action against them in their fictitious names, and Plaintiff is informed and believe that each of those Defendants was in some manner negligently and proximately responsible for the events and happenings alleged in this complaint and for Plaintiff's damages.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "21," above, with the same force and effect as though fully set forth herein.

23. In or about 2008, Plaintiff was assigned to the Nassau BOCES Carman Road School, where she provided speech teaching services to some of the most disabled Nassau BOCES students.

24. The Plaintiff's performance evaluations were regularly quite detailed and complimentary to her performance, since she provided many innovative programs school-

wide, not just for the students that were on her caseload. In addition to her NYS Speech Pathology license and my license for Teacher of Speech and Hearing Handicapped, she also received two (2) administration degrees from the College of New Rochelle, in 1999, to wit: (SDA) School District Administrator, and (AS) School Administrator Supervisor.

25.     The school she was assigned to, (the Carman Road School), was for students ages 3-21, with moderate to severe physical, cognitive, and emotional challenges. Since most of the children were in wheelchairs, the school provided not only education, but more importantly pragmatic and social skills.

26.     In 1997, after working only one year, the Plaintiff was selected to be the Speech Liaison of 22 Speech. Since the Plaintiff had a business background, her leadership, innovative ideas and negotiating skills were evident. Her liaison skills were diverse, and she was not afraid of a challenge. Her daily responsibilities included but were not limited to: classroom assignments for the speech therapists (which she came in on her own time during the summer to accomplish); the scheduling for 22 therapists; and advocating for the therapists when they had a. difficulty.

27.     The Plaintiff met with then Principal, Amy Rumelt, approximately, once a week. This was a collaborative situation in which she wanted to push a school-wide program:

- She developed the CALL program with one other colleague in which they developed a system to engineer the whole school with visual symbols and picture boards for each student to follow a symbol schedule;
- Plaintiff provided Staff development to all the teachers, therapists, teacher's assistants, and ancillary staff;
- Plaintiff was recognized by James Cappadonna, who was the speech Supervisor, and

he wanted her to work directly under him, doing staff development, model lessons, and implement several reading programs, since BOCES was no longer exempt from NYS testing;

- Plaintiff trained in approximately 7 different reading programs, such as Linda Mood Bell, Story Grammar Marker, Preventing Academic Failure, and several others;

- It was Plaintiff's duty to figure out what programs would work in the different schools, and modify curriculum, classroom demonstration, and staff development. (She was also getting her masters in reading).

28.     The Plaintiff's duties were that of an administrator, not a speech pathologist; however, since Plaintiff had the requisite expertise and leadership skills, it was extremely cost-effective for BOCES to pay Plaintiff less as a speech pathologist, yet have her function and produce for them as an administrator.

29.     In 2006, there was a big push to get a formalized curriculum for the preschool; therefore, the Plaintiff was in charge of researching, meeting with vendors and preview materials. This was not an easy task, as the most senior members staff were very set in their ways. After several months and additional preparation, the Plaintiff finally began to get some respect, and when she established a rapport with staff, the principal asked her to observe member of the staff and report back to her; the Plaintiff was uncomfortable doing this.

**The Plaintiff's Injuries**

30.     While working for Nassau BOCES, the Plaintiff sustained a series of injuries and required her to miss time from work on various occasions.

31.     Unfortunately, on May 11, 2007, unbeknownst to the Plaintiff, she was sitting in a broken chair. When she leaned back the whole chair flipped severely injuring her. Even

9

with numerous x-rays, three rounds of epidurals, acupuncture, and physical therapy, the Plaintiff's neck, back, and lower back were never the same. She was compelled to submit a New York State Workers Compensation claim.

32. In 2008, there was food spilled in hallway, and the Plaintiff accidently slipped and damaged her knee severely. Since the Plaintiff's own children were very young and fully dependent on her, she delayed surgery for as long as possible.

33. In July of 2013, she had her first total right knee replacement; however, unfortunately, the doctor used wrong size and incorrect location. After a year of testing and being in complete agony, she could barely walk and in November 2014, had to have additional surgery (a right knee, total joint revision).

34. In or about 2011, while working, the chair in which she was sitting unexpectedly flipped over, and she hit her head.

35. In or about September 2015, Plaintiff sustained a *non-work-related* shoulder dislocation, which was ultimately diagnosed as being broken and required surgery in March 2016. Also in or about 2016, while working, the Plaintiff, fell out of a chair and injured the side of her torso.

36. The accidents and the injuries resulting to the Plaintiff as stated herein were unintentional and not caused by reason of her own negligence.

37. As a consequence of these various injuries, Plaintiff experienced a lot of pain and suffering and was prescribed pain medications, which she was required to take due to the extent of her injuries.

38. Moreover, the Plaintiff suffered 2 pulmonary embolisms one in April of 2015, and one in October 2015, and had to get additional clearances from her hematologist and her

pulmonologist. As a result, the Plaintiff applied for 50 sick days from the teachers' bank through the Union President, Bob Dreaper.

39. In November, 2015, Plaintiff received a letter notifying her that she was required to attend a New York Education Law § 913 evaluation on February 24, 2016, at Dr. Randall Solomon's office in Suffolk County, New York, to determine is she was fit for her duties as a as a Speech and Hearing teacher of students with disabilities.

40. Plaintiff was advised by her superior that the evaluation was routine and that it was a BOCES policy due to the injuries that she had sustained, and is further required when an employee is out several times on Workers Compensation related injuries. Moreover, the Plaintiff was advised that her time and attendance were also the reasons for the evaluation.

41. The Plaintiff notified Bob Dreaper, ("Mr. Dreaper"), the Union President at the time, and he advised her that she was required to go to the New York Education Law § 913 evaluation, otherwise she would be considered insubordinate and could be terminated.

42. Dr. Solomon is engaged by many, if not all, of the Nassau County and Suffolk County School Districts, wherein he allegedly engages in similar subversive tactics, such that identical diagnosis of incapability and mental incompetence are rendered against teachers without any corroboration or basis.

43. Dr. Solomon has been described by union presidents as a conduit utilized by the various Districts to purposefully remove teachers who could not otherwise be stripped of their tenure.

44. On or about February 12, 2016, the Defendant Nekulak, the Executive Director of Human Resources at Nassau BOCES admitted to the Plaintiff that she had already started an investigation against her with regard to her time and attendance. The Plaintiff was

removed from her teaching position and reassigned.

45.     Thereafter, on or about February 24, 2016, the Defendant, Dr. Solomon conducted this mandated psychological "examination" pursuant to Section 913 of the New York State Education Law at his office in Port Jefferson Station, New York. The Plaintiff met with the Defendant, Dr. Solomon on that <u>one occasion</u>, for approximately forty-five (45) minutes, without the administration of any standardized psychiatric testing as is commonly recommended by reputable mental health practitioners. Nonetheless, the Plaintiff was coerced into signing a HIPAA release for her medical records. The Plaintiff's meeting with Dr. Solomon was more like an interrogation than an evaluation.

46.     Defendant, Dr. Solomon obtained the information after he ordered the Plaintiff to fill out a HIPAA form that was not in compliance with the official government-issued form, and Dr. Solomon went outside of even those limitless requests written therein. Dr. Solomon has his own HIPAA form that is not valid, as it does not have limits to the period put under scrutiny for the manipulation by Dr. Solomon in the New York Education Law § 913 evaluations. Nevertheless, the Plaintiff felt pressured to give Dr. Solomon every document he requested.

47.     At that time of the evaluation, the Plaintiff was suffering from a broken humorous bone and needed a total right shoulder replacement, which was scheduled for March 18, 2016. She was in excruciating pain, it was difficult for her to drive, however she had no one else available to take her and re-scheduling was out of the question.

48.     The Plaintiff not advised that she could be accompanied by a lawyer and/or a union representative at the aforementioned evaluation with Dr. Solomon.

49.     The letter signed by Dr. Tracey Nekulak, in or around November, 2015,

Deleted: hours

Deleted: HIPPA

contained no statement indicating that Plaintiff had a right to bring counsel to the evaluation or retain an attorney. Had the Plaintiff been correctly informed and made aware of that situation, she would have retained counsel and would not have been coerced into signing a HIPAA release.

Deleted: HIPPA

50.     When the Plaintiff was ready to return to work, she was telephoned by Bob Draeper to let her know that she was on administrative leave until further notice. She then received another letter for Defendant, Tracey Nekilak advising the Plaintiff that Dr. Solomon's report was received and she was to go to the central office to receive a copy.

51.     Following an abbreviated interview and no psychological testing, on or about June 3, 2016, the Defendant, Dr. Randall Solomon, PhD., prepared a § 913 psychiatric evaluation report, which, *inter alia*, erroneously concluded that, the Plaintiff *"was not mentally fit to return to her teaching position."*

52.     In the report Dr. Solomon stated that Plaintiff was *"lacking the physical or mental capacity to perform her duties; that she was unfit for her duty; and that Plaintiff cannot perform the functions of her job responsibilities."* In his report, the Plaintiff was labeled a drug addict, alleged to be suffering from an anti-social personality, and about seven (7) other diagnoses were alleged. Dr. Solomon gave her a Global Assessment of Functioning (GAF) score of 50,[1] without justification.

53.     The Plaintiff shared the report with her Union representatives, with Lori Gross, Bob Draeper, and Steve Clemons. She was horrified, humiliated, and embarrassed about what Dr. Solomon had erroneously written about her.

54.     The Plaintiff then attended a meeting with the Nassau BOCES, where the

---

[1] A GAF score of 100 represents normal functioning.

13

following individuals were in attendance: Defendant, Tracey Nekulak. Executive Director of Human Resources, Selma Stoddard Assistant Director of Human Resources, Mike McAlvin, BOCES Attorney, Steve Clemons, paralegal for NYCET, Bob Dreaper, Union President, Lori Gross, the Incoming Union President.

55.     At the meeting it was discussed that based upon Dr. Solomon's report, wherein he erroneously concluded that she was unfit to work, the suggestion was made that the Plaintiff go to counseling at Employee Assistance Program (EAP) over the summer and if they determined that the Plaintiff was fit for work, she would return to teaching in September.

56.     In or around June, 2016, Nassau BOCES referred Plaintiff to the Employee Assistance Program, which Plaintiff attended and fully complied with its requirements and her participation in said program was accordingly discontinued.

57.     In the Employee Assistance Program (EAP) over the summer, the Plaintiff met with social/worker therapist, Theresa Rauh-Hoell, who had ongoing discussions with the Plaintiff, characterized Dr. Solomon's report as unprofessional, and spoke with the Plaintiff's psychologist, Dr. Briglio. Ms. Rauh-Hoell also communicated with Nassau BOCES, and told them that the Plaintiff was fit for work.

58.     Nonetheless, the Defendant Nassau BOCES failed to adhere to what they had promised. Despite receiving three (3) separate letters indicating that she was fit for work from Theresa Rauh-Hoell, Dr. Kumar, and Dr. Briglio, the Defendant Nassau BOCES sent the Plaintiff a letter at the end of August directing that she was to continue on Administrative leave until she went back to see Dr. Solomon on Wednesday, October 5, 2016.

59.     The Defendant, Nassau BOCES were not looking for accurate information about the Plaintiff's progress, they were just looking for someone to discredit her.

14

60. Dr. Solomon's assessment did not change from the first visit, despite meeting her the second time for only 20 minutes.

61. Upon information and belief, since the Plaintiff had complained so much about not being able to bring a representative with her to the first meeting, Nassau BOSES permitted her to bring a representative to the second evaluation; therefore, the Plaintiff arranged for Dr. Briglio to accompany her to the evaluation.

62. On Monday, October 3, 2016, the Plaintiff met with Dr. Briglio, and they called over to confirm the 9:00 am appointment time with Dr. Solomon's office. However somewhere between Monday evening and Wednesday morning, the appointment time mysteriously changed from 9:00 am to 8:00am, without the Plaintiff's knowledge.

63. On October 5, 2016, the Plaintiff received a phone call at 8:05 am, from Dr. Solomon's office advising her that she was late for her appointment; that was the first time that the Plaintiff was made aware that the appointment time had been changed.

64. With traffic from the Plaintiff's residence, it took her approximately 45-50 minutes to get from Bay Shore to Port Jefferson, and Dr. Solomon disingenuously included in his report that she had arrived late for her appointment, and he reprimanded her for being late, despite the fact that she had never been notified that the appointment time had never been changed.

65. Upon information and belief, this was a purposefully contrived event, to provide negative information to the Plaintiff's assessment.

66. Once again, Dr. Solomon continued to erroneously accuse the Plaintiff of opioid abuse. Further, he was disrespectful to Dr. Briglio, to wit: Dr. Solomon told him not to speak unless he was spoken to, and when Dr. Briglio did speak, Dr. Solomon's constant

insinuations were that Plaintiff was being "dishonest" and "less than forthcoming" about an alleged "addiction."

67. According to Dr. Solomon, Dr. Briglio, Dr. Kumar, and Theresa Rauh-Hoell were all inept in their assessment of the Plaintiff and, therefore, he decided *sua sponte* that their input and collaboration would not be valid evidence to be included on his report.

68. Dr. Solomon erroneously decided that Dr. Briglio was more of an advocate for the Plaintiff and was treating her irresponsibly. Therefore, he disingenuously and self-servingly opined that his extremely limited contact with the Plaintiff provided a more appropriate analysis than a 3-year relationship, where Plaintiff was treating with Dr. Briglio 1-2 times per week.

69. While due to his behavior toward her, understandably, Plaintiff would not make herself available to Dr. Solomon over the phone without a witness, Dr. Solomon falsely indicated that she had only offered him one time when she would be available, when she actually had offered him a minimum of three separate times, and even left it open ended that if he was not available at any of those times he could give her a few times when he would be available, so they could work something out. Nonetheless, Dr. Solomon conveniently failed to recall this information.

70. Dr. Solomon conveniently failed to recall many things about his encounter with the Plaintiff, to wit: he failed to even identify her following their brief meetings. Following their appointments, he was asked to point the Plaintiff out in a conference room; there were only two females in the room, and he selected the other female, who didn't even resemble the Plaintiff, at all.

71.     At the October 5, 2016, second encounter, the Plaintiff was given another urine test, which was negative, yet, Dr. Solomon erroneously accused the Plaintiff of submitting someone's else's urine.

72.     Dr. Solomon obtained a urine sample from the Plaintiff on October 5, 2016, allegedly sent it all the way to Vermont for analysis and had the results by October 6, 2016, (the very next day), which he falsely alleged indicated that Plaintiff was using drugs that *"don't show up in a urine test,"* and now falsely indicated that she had tested positive for excessive alcohol abuse. The Plaintiff had absolutely no alcohol is her system.

73.     The Plaintiff was falsely accused on malingering and resisting a return to work. Nothing could be further from the truth. On October 4, 2016, the Plaintiff had a breast MRI at Great South Bay Imaging in Islip. The conclusion of the test resulted in a bilateral mastectomy which was performed on October 19, 2016.

74.     In or around October 24, 2016, by way of subsequent medical report issued by Dr. Randall Solomon, the Plaintiff was again found unfit to return to her teaching position. In the subsequent report Dr. Solomon stated that Plaintiff *"was lacking the physical or mental capacity to perform her duties; that she was unfit for her duty; and that Plaintiff cannot perform the functions of her job responsibilities."*

75.     Notably, the Plaintiff had been seeing her own psychologist, Dr. Richard Briglio, who was treating her on a weekly basis. He disagreed with Dr. Solomon's reports, and moreover, added that Plaintiff's use of pain medication was not a dependence, but a need because of her difficult shoulder surgery.

76.     Nonetheless, the Defendant, Nassau BOCES erroneously relied upon Dr. Solomon's report, finding that there was no improvement in Plaintiffs evaluation, and determined her to be unfit to return to her teaching position.

77.     In or around March, 2017, the Plaintiff was assigned to The Robert E. Lupinskie Center for Curriculum, Instruction, and Technology.

78.     While reassigned to the Robert E. Lupinskie Center for Curriculum, Instruction, and Technology ("Lupinskie"), the Plaintiff was supervised by Defendants, Kim Scharoff, and Patricia Schwetz.

79.     The Defendants, Kim Scharoff, and Patricia Schwetz were abusive to the Plaintiff, and constantly subjected her to harassment, unwarranted criticism, disparagement, and ridicule. For example, the Plaintiff was not allowed to leave her cubicle, except during lunch. She was refused permission to go to the bathroom during the workday, without producing a doctor's note. The Plaintiff was told by the Defendants that going to the bathroom during the workday was a privilege, not a right.

80.     Also, while at Lupinskie, the Plaintiff was denied a chair that had wheels; she was forced to work at her desk in a stationary chair. She was not allowed to speak to anyone else in the building, except between the hours of 12:00 pm and 1:00 pm.

81.     Defendants Scharoff and Schwetz belittled the Plaintiff and subjected her to ridicule by their hostile and irrational demands, which were further used to support the preferring of 3020-a charges against the Plaintiff, as well as cause her suffer severe emotional distress.

82.     As a result of Dr. Solomon's erroneous recommendations created after deliberately and maliciously misinterpreting the information in the illegally obtained

reports, and the actions of Defendants Scharoff and Schwetz, the Plaintiff was notified of the commencement of a disciplinary proceeding against her in accordance with Education Law Section 3020-a.

83.     Education Law section 913 authorizes a board of education to have a medical examination of an employee conducted when questions arise as to the employee's physical or mental health. The statute states that the board of education of any school district "shall be empowered to require any person employed by the board of education ... to submit to a medical examination in order to determine the physical or mental capacity of such person to perform his or her duties."

84.     The law specifies that the exam must be performed either by the district's director of school health services or by another physician or healthcare provider of the employee's choice. The employee has the right to be accompanied to the exam by a physician or other qualified person of his or her choice.

85.     Plaintiff was never told that she could be assessed by a doctor of her choice. In fact, she was forced to see Dr. Solomon not once, but two times, only to be lied about and her character maligned.

86.     Upon information and belief, on or about April 18, 2018 Defendant, Kim Scharoff told co-workers, that she, was going to take away Plaintiff's license at New York State Education Department.

87.     Following a hearing testimony on January 31, February 12 and 16, 2018, the Plaintiff was exonerated on all charges against her in an Opinion and Award dated May 3, 2018.

88.     As a result of the Defendants' actions, the Plaintiff's reputation as a qualified and competent teacher has been irreparably harmed, causing her continuing and permanent damages, such that she is denied any opportunity to retain employment in an administrative position; a position, to which she has aspired and trained her entire career.

89.     It was only in May, 2018 that Plaintiff became aware of the fraud and deceit of the Defendants, as well as the effects this fraud and deceit had on her life. Another similarly situated teacher appeared as a witness for the Plaintiff with respect to the Plaintiff's 3020-a proceedings, after she was similarly forced to see Dr. Solomon. It was also at this time that Plaintiff became aware that the District never gave Dr. Solomon a contract for his work, and thus never publicly citing the terms and scope of his work with her.

90.     Another demonstration of fraud and deceit is the fact that Dr. Solomon never had to bid for any job with the District that involved a Section 913 assessment.

91.     Without a contractor bidding on any job, as well as being paid under the table by the school district, Dr. Solomon was directed to give assessments finding the educator "unfit to work." In fact, Dr. Solomon wrote on the top of his notes in the Plaintiff's 3020-a proceedings, *"THEY DON'T WANT HER BACK."*

92.     The Section 913 law has been weaponized by the use of Dr. Solomon, who is hired to recommend that the school districts fire tenured professionals as "unfit" regardless of whether they are actually unfit. The Defendants know that they are deliberately denying tenured teachers their tenure rights under Education Law 3020-a, namely to have a fair and impartial assessment of their work at a due process hearing, and to have their jobs protected from the whims and fancy of principals and/or superiors, including Superintendents and school boards.

93.     The Arbitrator in the Plaintiff's 2018 3020-a proceedings would not hear the testimony of the Plaintiff, but did accept into evidence the Opinion and Award written by Arbitrator, Thomas Germano in a colleague's 3020-a proceedings.

94.     On May 3, 2018, the Plaintiff, was found not guilty of all charges after the Arbitrator recognized the fraud and deceit of Dr. Solomon. In this regard, Arbitrator James Brown wrote:

> "Dr. Solomon's June 3, 2016 written report of his February 2016 evaluation stated various diagnoses of Respondent including "malingering" which he defined as 'either a fabrication and/or an exaggeration of symptom in order to consciously and willfully obtain a secondary gain.' (Tr.96). He found that Respondent was malingering because it 'would be very unusual for a person to have these kinds of injuries repeatedly.' (Tr.62). In sum, Dr. Solomon's written report of his February, 2016 evaluation, concludes that Respondent is 'not mentally fit' to perform her job duties and that returning her to the classroom constituted an 'unacceptably high' risk. (Tr. 101; BOCES Exhibit 1)."

Opinion and Award, pp. 6-7

> "BOCES 'improperly' retained the services of Dr. Solomon who never 'bid for his work.' (Respondent Brief at 13). Alleging a violation of a local ordinance, Respondent submits that 'public money' was improperly 'spent without any budgetary line, no bidding and no accountability,' which resulted in two evaluations with 'no oversight, guidance or accountability.' (Respondent Brief at 15-17)."

Opinion and Award pp. 13-14

> "Herein, BOCES relies on Dr. Solomon's opinion that Respondent poses a significant risk to her students, because she is addicted to prescribed pain medication. Yet, there is no evidence that Respondent's job performance was impaired, and no such evidence was presented to Dr. Solomon. Indeed, Dr. Solomon saw no documentation that Respondent's 'work performance was less than acceptable,' and he knew of no 'instances of her work performance being subpar.' (Tr. 177-178)...."

21

> "…. Dr. Solomon also confirmed that Respondent's classroom performance did not trigger her Education Law § 913 evaluation; rather, BOCES expressed concern that Respondent had filed an 'excessive' number of workers' compensation claims (Tr. 54), which undoubtedly presented a real challenge for BOCES."

Opinion and Award pp. 15-16

> "Arbitrator James Brown gave the following Award: 'Respondent, Debra Becker, is not guilty of the Charges and Specifications, and is thus acquitted of the Charges against her.'"

Opinion and Award, p. 17

95.     Despite being exonerated of all charges against her and restored to her teaching position with the Nassau BOCES, Plaintiff's harm as a result of the Defendants' actions is continuing, as a result of having to disclose the fact that she was previously charged with disciplinary action and placed on administrative leave, all resulting from being subjected to the Section 913 psychological examinations by Dr. Solomon, wherein he made unsubstantiated findings concerning Plaintiff's capabilities and mental competence to teach, which he knew were false.

96.     This having to disclose the fact that she was previously charged with disciplinary action and placed on administrative leave, and the inability to secure other employment in her field of expertise and education subjects Plaintiff to continuing harm and emotional and physical distress.

97.     Plaintiff has complied with the requirements of New York General Municipal Law Section 50-I by serving notices of claim upon BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY (NASSAU BOCES), and its employees, DR. ROBERT DILLON, TRACEY NEKILAK, KIM SCHAROFF, and PATRICIA SCHWETZ, within the time required by

New York General Municipal Law Section 50-e. More than thirty (30) days have elapsed since the service of those notices, and no offer of settlement has been made.

98.     At the request of BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF NASSAU COUNTY (NASSAU BOCES), DR. ROBERT DILLON, TRACEY NEKILAK, KIM SCHAROFF, and PATRICIA SCHWETZ, on November 12, 2018 and November 19, 2018, the Plaintiff submitted to hearings pursuant to New York General Municipal Law Section 50-h involving the events as referred to hereinafter. No other or further hearings have been requested or conducted.

99.     The Plaintiff is informed and believes, and based on that information and belief alleges, that each of the Defendants designated herein are legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the injuries and damages to the Plaintiff alleged in this Complaint.

100.     Plaintiff is informed and believes, and based on that information and belief alleges, that at all times mentioned in this Complaint, in all instances the Defendants were the agents and/or employees of their co-defendants and in doing the things alleged in this Complaint were acting within the course and scope of such agency and/or employment.

## CAUSE OF ACTION FOR DEFAMATION AND/OR DEFAMATION *PER SE*

101.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "100", above, with the same force and effect as though fully set forth herein.

102.     The accusations made against the Plaintiff, as documented, published, spoken, generated, and disseminated by these Defendants and others as identified above are remarkably false.

103.    The Plaintiff was presumed to be guilty in these areas. This rush to judgment without an opportunity for the Plaintiff to be heard is a denial of due process and the equal protection of the laws and defamation.

104.    The actions of Defendants were wanton and reckless, with malice and without reason or basis, and were arbitrary, capricious, and unfounded. To wit, the oral and written statements made by Dr. Dillon and Tracy Nekulak are defamatory as they directly impact the Plaintiff's character and reputation within Nassau BOCES, as well as outside the school District. The Defendants Scharoff and Schwetz belittled the Plaintiff and subjected her to ridicule by their hostile and absurd conduct, to wit: denying Plaintiff bathroom visits, a proper chair to sit on during the school day, and making other such derogatory comments, which were used to support the proffering of erroneous 3020-a charges being brought against Plaintiff, as well as cause her emotional distress. The harassment is continuing, as the Plaintiff is still subjected to the improper conduct of the Defendants.

105.    By reason of the foregoing, Plaintiff has suffered loss of income and benefits, and is caused mental and physical anguish, loss of enjoyment of life, and emotional distress, all to her damage.

106.    Defendants' acts, taken singularly and in combination, are a direct and proximate cause of Plaintiff's damages.

<u>The Plaintiff is a Private Figure</u>

107.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "106," above, with the same force and effect as though fully set forth herein.

108.    The Plaintiff is a private figure for the purposes of this action, having lived her entire life outside of the public eye.

109.    The Plaintiff did not engage the public's attention to resolve any public issue that could impact the community at large.

<u>The Defendants Acted Negligently and With Actual Malice</u>

110.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "110," above, with the same force and effect as though fully set forth herein.

111.    The Defendants documented, published, spoke, and disseminated false and defamatory statements negligently and with actual knowledge of falsity or a reckless disregard for the truth, ignoring the rules of proper procedure and protocol.

112.    The Defendants knew, but ignored the importance of properly verifying the damaging and incendiary accusations against the Plaintiff and providing the proper notification to the Plaintiff.

113.    The Defendants knew, but ignored the importance of verifying the damaging and incendiary accusations against the Plaintiff prior to documentation and distribution.

114.    The negligence and actual malice of the Defendants is demonstrated by their utter knowing disregard for the truth available; however, the Defendants chose to substantiate its own biased narrative.

115.    Instead of following the proper protocol for investigations, the Defendants, recklessly rushed to record and distribute their false and defamatory accusations in order to advance their own respective agendas.

116. In doing so, the Defendants distributed the false allegations giving these false and defamatory accusations the appearance of credibility and permanence.

117. The Defendants departed from the reasonable standard of care in failing to properly investigate the claims presented and disingenuously assuring the Plaintiff that that the referral to Dr. Solomon for a New York Education Law § 913 evaluation was merely routine and that it was a BOCES policy; an assurance upon which the Plaintiff justifiably relied in considering the Defendant's proposed resolution.

118. The Defendants' collective conduct demonstrates a purposeful avoidance of the truth and the recording and transmission of false and defamatory accusations with actual knowledge of falsity and disregard for appropriate procedure.

119. The Defendants negligently and recklessly transmitted its false and defamatory accusations by failing to conduct a reasonable and appropriate investigation, and allowing these false findings to become a permanent part of the Plaintiff's professional record.

120. Indeed, the Defendants negligently and recklessly relied upon a biased pre-disposition of the Plaintiff.

121. The Defendants consciously elected to ignore any contrary information in favor of its pre-conceived, false narrative against the Plaintiff.

122. The Defendants violated protocol and inappropriately transmitted false and defamatory accusations with actual knowledge of falsity and allowing these false findings to become part of the Plaintiff's professional record.

123. The Defendants violated protocol and inappropriately negligently and recklessly transmitted false and defamatory accusations in derogation of acceptable

principals of professional ethics, including by wrongfully placing its own biased agenda over the harm the false and defamatory accusations caused to the Plaintiff.

124.    The Defendants actual malice is further evidenced by any failure to retract the false and defamatory accusations made against the Plaintiff.

<u>Damages</u>

125.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "124," above, with the same force and effect as though fully set forth herein.

126.    The transmission of the false and defamatory accusations and false reporting of unfitness directly and proximately caused substantial and permanent damage to the Plaintiff's profession as a teacher, which was reasonably foreseeable.

127.    The false and defamatory accusations against the Plaintiff are defamatory *per se*, as they are libelous on their face without resort to additional facts, and as clearly demonstrated here, the Plaintiff with an erroneously sustained allegation of unfitness is subjected to is continuously subjected to public hatred, contempt, scorn, obloquy, and shame, injurious to his profession as a teacher working with young students, and an inability to secure employment in the field of education despite her impeccable credentials.

128.    These statements were made without privilege or authorization.

129.    The statements attacked the Plaintiff's professional abilities and the conduct of Plaintiff's employment as a teacher, and were therefore defamatory *per se*.

130.    The Plaintiff has suffered, and will continue to suffer, damages as a result of the Defendant's defamation of the Plaintiff's employment as a teacher and her professional reputation.

131.    As a direct and proximate result of the false and defamatory accusations the Plaintiff suffered and continues to suffer permanent harm to her reputation a teacher.

132.    As a direct and proximate result of the false and defamatory accusations the Plaintiff suffered and continues to suffer severe emotional distress.

133.    As a direct and proximate result of the false and defamatory accusations the Plaintiff is forced to live her life in a constant state of concern over an inability to acquire employment in a filed in which, she is highly qualified and an inability to adequately support herself in accordance with a pay scale to which, he was previously accustomed.

134.    The Defendants transmitted the false and defamatory accusations to be a part of her permanent record available to any potential employer with actual malice and common law malice, thereby entitling the Plaintiff to an award of punitive damages.

135.    The Defendants' conduct was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

136.    The Plaintiff is entitled to an award of punitive damages to punish the Defendants to deter them from repeating such egregiously unlawful misconduct in the future.

137.    Plaintiff sustained damages in excess of the jurisdictional limits of all lower courts, which might otherwise have jurisdiction.

**AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR NEGLIGENCE**

138.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "137," above, with the same force and effect as though fully set forth herein.

139. All Defendants each individually, by and through its agents, servants and employees, actual and ostensible, were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein.

140. Defendants' negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

141. The Plaintiff has suffered significant economic damages, actually and proximately caused by the departures and negligence of the Defendants herein.

142. The injuries and damages sustained by Plaintiff were caused solely by the torts of the Defendants, without any negligence on the part of any other person contributing thereto.

143. Plaintiff sustained damages in excess of the jurisdictional limits of all lower courts, which might otherwise have jurisdiction.

<u>**AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>

144. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "143," above, with the same force and effect as though fully set forth herein.

145. By virtue of all of the aforesaid, the Defendants' conduct was and is so atrocious and malicious that a reasonable person should know or would have known that its effect was such as to cause the Plaintiff extreme emotional distress.

29

146.     The effect of such negligent behavior toward the Plaintiff, inflicted through the Defendants' intentional and deliberate campaign of harassment, rose and continues to rise to a level that goes beyond all bounds of decency in a civilized society.

147.     As a result of the utterly vicious and incomprehensible nature of the actions taken against the Plaintiff by the Defendants, the Plaintiff has suffered and continues to suffer such distress that the conduct and actions rose and continues to rise to a level such that no reasonable person could be expected to endure.

148.     The Plaintiff has sustained, among other things, severe mental and physical distress, severe emotional and psychological distress, physical discomfort, loss of sleep, anxiety, and has sustained damages of a permanent, lasting nature.

149.     The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

### AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

150.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "149," above, with the same force and effect as though fully set forth herein.

151.     The aforementioned conduct of the Defendants is extreme, outrageous, and unwarranted and constitutes a deliberate and persistent campaign of intimidation resulting in an intentional infliction of emotional distress on the Plaintiff.

152.     The Defendants intentionally, willfully, and recklessly permitted a deliberate and persistent campaign to threaten and intimidate the Plaintiff for the intentional purpose of attaining her/their own gains and causing the Plaintiff grief and distress.

153.    The Defendants have intentionally inflicted severe emotional distress upon the Plaintiff by a course of outrageous and horrifying conduct, which has caused her to suffer humiliation; embarrassment; the loss of business, friendships and associations; the loss of reputation; ridicule; depletion of financial resources, as well as other inchoate and unspecified damages, as yet to be fully determined.

154.    The Defendants' conduct as related to the Plaintiff in these and the aforementioned incidents in the allegations common to all causes of action, were such that they knew that severe emotional distress would be certain or substantially certain to result, and in fact, engaged in the acts purposefully and specifically with the intent to cause distress in an effort to achieve their own ulterior motives. Such conduct was so malicious that it rises to a level that goes beyond all bounds of decency in a civilized society.

155.    The Defendants have specifically and intentionally caused the Plaintiff to suffer extreme emotional distress by outlandish and egregious statements that are untrue.

156.    That as a result of the aforesaid intentional infliction of emotional distress, the Plaintiff has suffered and continues to suffer a level of distress that rises to a level such that no reasonable person could be expected to endure.

157.    The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

### AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR FRAUD

158.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "157," above, with the same force and effect as though fully set forth herein.

159.     Defendants made a misrepresentation of fact in stating that Plaintiff had a GAF score of 50, when they knew that this was totally false and blatantly absurd.

160.     Defendants' goal was to find Plaintiff unfit to work, so that she could be terminated. Defendants wanted Plaintiff to be evaluated by Dr. Solomon, and did not tell her she could be assessed by her own doctor, because they wanted to rely solely on Dr. Solomon's opinion.

161.     At the time that Plaintiff was brought to her Section 913 examination with Dr. Solomon, she was not aware that there was fraud and deceit in the procedures used to get her into Dr. Solomon's office, and therefore Plaintiff was justified in subjecting herself to the abusive actions toward her by Dr. Solomon, and his report.

162.     Defendants and the school District's contractor, Dr. Randall Solomon, PhD's actions give rise to a cause of action for fraud due to the knowing and intentional misrepresentation made in connection with their collusion with the Defendant, Dr. Randall Solomon in an effort to terminate educational employees by having them erroneously declared mentally unfit to continue in their employment capacity.

163.     The Defendant, Dr. Solomon's findings are unsubstantiated and self-serving. They are not based upon any psychological testing or analysis, and contain statements of hearsay. The evaluation of the Plaintiff took place after one (1), one two (2) hour meeting, wherein the report identified alleged "*firmly entrenched psychological deficits*" and "*emotional, psychological, and personality issues.*" After meeting with the Plaintiff on that one brief occasion, the Defendant, Dr. Solomon was able to disingenuously opine that the Plaintiff "*was unfit to resume her teaching responsibilities.*"

164.    Throughout her career with Nassau BOCES, the Plaintiff consistently received exemplary marks and comments in his yearly performance evaluations and always took the initiative with respect to her duties. Her intense concern for the students and love of the school community was evident in everything he did. This flagrant inconsistency in Dr. Solomon's reporting cannot be legitimately explained.

165.    As a result of Defendants' use of Section 913 examination to defraud the public in believing the medical examinations ordered by the school board in this matter was lawful and fair, and using Dr. Solomon as a 'hit man' and the law as a weapon of destruction without justification, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in as well as punitive damages and costs to be determined at trial.

166.    Further, as a result of these fraudulent acts of collusion among the Defendants, the Plaintiff is and will continue to be damaged.

167.    The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

**AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR A VIOLATION OF PLAINTIFF'S CIVIL RIGHTS IN ACCORDANCE WITH 42 U.S.C. §1983 – FIFTH AND FOURTEENTH AMENDMENTS; ART. 1, §11, NEW YORK STATE CONSTITUTION**

168.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "167," above, with the same force and effect as though fully set forth herein.

169.    The Defendants, their employees and agents, owed the Plaintiff a duty under the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, §11 of the New York State Constitution to ensure the Plaintiff's due process of law.

170.    Despite this well-defined duty, Defendants failed to act in accordance with the preservation of the Plaintiff's due process rights. The Plaintiff's subjected to an erroneous, unsubstantiated, and unnecessary psychiatric evaluation, served with fabricated and unfounded charges, arising from that illegitimate evaluation, placed on a suspension that exceeded the maximum allowable amount of time and subjected to the placement of fabricated and unfounded charges and remarks in her permanent record with the State of New York Department of Education that can be publically viewed.

171.    Plaintiffs are informed and believe that the acts of the Defendants, their employees and agents, were intentional in failing to protect and preserve Plaintiff's civil rights and that, at minimum, Defendants were deliberately indifferent to the likelihood that the Plaintiff's rights would be denied without due process based on their purposeful and fraudulent acts, and on the past occurrences of these same constitutional and statutory violations of the law.

172.    As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer loss of her civil rights and is entitled to compensatory damages for said loss.

173.    Moreover as to the claims arising under 42 U.S.C. § 1985, the Defendants herein have acted under color of State law.

174.    Further, while acting under color of state law, the Defendants deprived the Plaintiff of a federal statutory right. The Plaintiff has demonstrated a deprivation of

liberty/"stigma-plus" claim that the Defendants made and facilitated false a stigmatizing statements about her, wherein there was a state imposed burden, and the Plaintiff has experienced an adverse act, to wit: she has been publically "marked" and falsely sustained as having *"firmly entrenched psychological deficits"* and *"emotional, psychological, and personality issues,"* and being classified as *"unfit to resume her teaching responsibilities"* that will prevent her from working with students or the New York State Department of Education in any capacity. Further, there is no post-deprivation remedy that would exonerate her, as that false an inappropriate, public characterization is a permanent part of her teaching record. The Plaintiff has no other adequate remedy at law or in equity.

175. The Due Process Clause protects an individual from a government employer who disseminates false and defamatory information about the individual. While the liberty interest at stake is the employee's reputation, the employee's liberty interest is implicated when the employer imposes such a stigma as to restrict the employee's ability to obtain future employment, in which case, due process requires the government to provide the employee a name-clearing hearing, which the Plaintiff was not provided.

176. The Nassau BOCES Defendants had actual knowledge that they intentionally created a narrative by developing and furthering false charges, and abusing the New York State Education Law Section 913 Law by retaining and relying upon the bias and unsubstantiated report of the Defendant, Dr. Randall Solomon to make the Plaintiff appear unfit to perform her duties as a teacher, and took terrible advantage of the situation.

177. Defendants failed to adhere to policies, consistent with the Nassau BOCES pattern, practice, and custom of condoning violations of civil rights, and failing to take appropriate investigative and remedial steps to end and prevent these violations.

35

178. The deprivation of civil rights, and cover-up that occurred in this case were not isolated events. Instead, they are yet another manifestation of a pattern and practice of misconduct of which the Defendants have had actual and constructive notice, and yet have not prevented.

179. In violation of her rights in accordance with Section 913 of the New York State Education Law, Defendant denied the Plaintiff the opportunity to be assessed by a doctor of her choice. In fact, she was forced to see Dr. Solomon not once, but two times, only to be lied about and her character maligned, which was utilized by the Defendants in an attempt to have her terminated from her position.

180. According to the subsequent findings, there was, and is a deep-seated culture of no accountability pervasive across the various school district facilities, where schools 'improperly' retain the services of Dr. Solomon who never 'bid for his work,' and alleging a violation of a local ordinance, determining that 'public money' was improperly 'spent without any budgetary line, no bidding and no accountability,' which resulted in evaluations with 'no oversight, guidance or accountability.'

181. Under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. An employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (I) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. See, also, Amendment 14 of the United States Constitution. The actions and statements of

these Defendants are indicative of a pattern of such behavior in order to justify terminating tenured educational employees from their position.

**AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION**
**FOR TORTIOUS INTERFERENCE WITH EMPLOYMENT**

182. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "181," above, with the same force and effect as though fully set forth herein.

183. Upon information and belief, the Defendants have intentionally, maliciously and improperly interfered in the Plaintiff's ability to secure employment in an administrative position, without legal justification.

184. All inquiries by prospective employers are denied access to any information regarding the Plaintiff's stellar qualifications and abilities due to the negative classifications on Plaintiff's permanent record. Eliminating the positive input, negatively impacts any opportunity for the Plaintiff to be hired by any other school.

185. Further, Dr. Solomon and the District Defendants collaborated and carried out their pretext in bad faith, animus and motivated by malevolent intent to purposefully cause harm to Plaintiff's career at Nassau BOCES and beyond.

186. Upon information and belief, Defendant's interference was intended to cause, and does cause harm to Plaintiff's status and reputation as a teacher.

187. Upon information and belief, Defendant's interference was intended to cause, and does cause, individuals and other school Districts to repudiate and refuse to consider the Plaintiff for employment with Plaintiff or alternatively to refrain from entering into prospective business arrangements with Plaintiff.

37

188.    Defendants interfere with Plaintiff's employment and business relationships for the purpose, and with the motive, of injuring Plaintiff. Defendants know and understand, that without a good standing in the teaching community, Plaintiff would not be able to secure employment in the field in which she is qualified, accomplished, and educated.

189.    This interference with Plaintiff's existing and prospective contractual relationships is continuing and intentional, and has proximately resulted and/or will result in damage to Plaintiff, including loss of income, loss of future earning, and other damages, in an amount to be proven at trial.

190.    The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff, for their credibility, veracity, and reliability, in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against employees; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation.

191.    Due to the negligence of the Defendants, the Plaintiff has been significantly damaged. The Plaintiff's reputation as a respected teacher has been irreparably and permanently damaged, the extent of which cannot be measured at this time. Her professional career has been substantially compromised.

192.    The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring

of the unsubstantiated claims made against the Plaintiff, for their credibility, veracity, and reliability, in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against employees; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation.

193. Due to the negligence of the Defendants, the Plaintiff has been significantly damaged. The Plaintiff's reputation as a respected teacher has been irreparably and permanently damaged, the extent of which cannot be measured at this time. Her professional career has been substantially compromised.

194. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claim made against the Plaintiff; among other things: in failing to possess the requisite judgment ordinarily exercised in investigating and monitoring claims against employees; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation.

195. As such, the Plaintiff respectfully requests that the Court enter judgment: for an Award representing compensatory/emotional damages for Defendants' deliberate and intentional misrepresentation of the Section 913 law and implementation, which was false

**Moved down [1]:** <#>Based on the foregoing, the Plaintiff has been damaged in the amount of $50 Million and 00/100 Dollars ($50,000,000.00), together with interest and the costs and disbursements of this action.¶

and known by the Defendants to be false, made for the purpose of inducing the Plaintiff to rely upon it to her harm and injury and withdrawal of the charges or record filed against the Plaintiff pursuant to Education Law 3020-a.

196. Based on the foregoing, the Plaintiff has been damaged in the amount of $50 Million and 00/100 Dollars ($50,000,000.00), together with interest and the costs and disbursements of this action.

**WHEREFORE**, the Plaintiff demands (a) judgment against the Defendants on all causes of action for compensatory, emotional, and punitive damages, and equitable relief, together with reasonable attorney's fees, interest, costs and disbursements of this action, in an amount to be determined at a jury trial of this matter, no less than $50,000,000.00 Million and 00/100 Dollars ($50,000,000.00); (b) that all costs of this action be taxed to the Defendants; and (c) that the Court grant to the Plaintiff such other and further relief that the Court deems just and proper, including equitable relief.

Dated: Garden City, New York
      August 13, 2021

                                  Yours, etc.,

                                  *Thomas F. Liotti*

LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
(516) 794-4700