UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DEBRA BECKER,

                         Plaintiff,

        -against-

NASSAU BOCES SCHOOL DISTRICT, BOARD OF
COOPERATIVE EDUCATIONAL SERVICES OF
NASSAU COUNTY (NASSAU BOCES); DR. ROBERT
DILLON, Individually and as District Superintendent of
the Board of Cooperative Educational Services of Nassau
County; DR. TRACEY NEKULAK, Individually and as
Executive Director of Human Resources of the Board of
Cooperative Educational Services of Nassau County; KIM
SCHAROFF, Individually and as Supervisor 1-Speech
Language and Hearing Services of the Board of
Cooperative Educational Services of Nassau County;
PATRICIA SCHWETZ, Individually and as Assistant
Director of the Board of Cooperative Educational Services
of Nassau County; DR. RANDALL SOLOMON;
ISLAND PSYCHIATRY, PC; and JOHN DOE AND
JANE DOE # 1-100, said names being fictitious, it being
the intent of Plaintiff to designate any and all individuals,
officers, members, agents, servants, and/or employees of
the aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

                         Defendants.
-----------------------------------------------------------------X

Docket No.:
21-cv-02855 (EK) (ST)


## MEMORANDUM OF LAW IN SUPPORT OF THE NASSAU BOCES DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

SOKOLOFF STERN LLP
*Attorneys for Defendants*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 130062

Of Counsel:
   Adam I. Kleinberg
   Chelsea Weisbord

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

PROCEDURAL HISTORY ................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

    I.    PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENT .............. 6

        A.  The Notice of Claim Does Not Name Nassau BOCES ................................................ 6

        B.  The Notice of Claim Does Not Include Negligence, NIED, or Fraud ......................... 7

    II.   ALL OF PLAINTIFF'S STATE LAW CLAIMS EXCEPT FOR FRAUD ARE TIME-BARRED ......... 8

    III.  PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM MUST BE DISMISSED ......................... 9

        A.  A Portion of Plaintiff's Procedural Due Process Claim is Time-Barred ..................... 9

        B.  Plaintiff Failed to Exhaust Her Administrative Remedies .......................................... 11

        C.  Plaintiff Fails to State a Procedural Due Process Claim ............................................. 13

        D.  Plaintiff Fails to State a *Monell* Claim Against Nassau BOCES ............................... 15

        E.  Plaintiff Does Not Plead Dillon, Scharoff, or Schwetz's Personal Involvement ........ 15

        F.  The Individual Defendants Should Be Afforded Qualified Immunity ....................... 16

    IV.  PLAINTIFF STILL FAILED TO STATE ANY STATE LAW CLAIM ........................................ 18

        A.  Due Process Claim Under the New York State Constitution ..................................... 18

        B.  Defamation Claim ....................................................................................................... 18

        C.  Common Law Fraud Claim .......................................................................................... 21

        D.  Tortious Interference Claim ......................................................................................... 22

        E.  Negligence Claim ........................................................................................................ 23

        F.  Intentional/Negligent Infliction of Emotional Distress Claims .................................. 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

CASES

*A.F.C. Enterprises v. NY City Sch. Constr. Auth.*,
2001 WL 1335010 (E.D.N.Y. 2001) ............................................................... 20

*A.W. by E.W. v. New York Dep't of Educ.*,
2021 WL 611409 (E.D.N.Y. 2021) ................................................................. 8

*Adams v. Suozzi*,
517 F.3d 124 (2d Cir. 2008) .......................................................................... 12

*Aequitron Med., Inc. v. Dyro*,
999 F.Supp. 294 (E.D.N.Y. 1998) ................................................................. 19

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001) ................................................................ 20, 21, 23

*Alwan v. City of New York*,
311 F. Supp. 3d 570 (E.D.N.Y. 2018) ........................................................... 18

*Anderson v. Creighton*,
483 U.S. 635 (1987) ....................................................................................... 17

*Anemone v. Metropolitan Transp. Authority*,
410 F.Supp.2d 255 (S.D.N.Y. 2005) ............................................................. 14

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ................................................................................. 16, 18

*Ashley v. Eastchester Police Dep't*,
2012 WL 234399 (S.D.N.Y. 2012) ............................................................ 9, 10

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004) .......................................................................... 15

*Bender v City of New York*,
78 F.3d 787 (2d Cir. 1996) ............................................................................ 25

*Benedith v. Malverne U.F.S.D.*,
38 F.Supp.3d 286 (E.D.N.Y. 2014) ................................................................. 6

*Biehner v. City of New York*,
2021 WL 878476 (S.D.N.Y. 2021) ...................................................... 24, 25, 26

*Blankman v. Cnty. of Nassau,*
  819 F.Supp. 198 (E.D.N.Y. 1993) ................................................................. 10

*Boice v. Unisys Corp.,*
  50 F.3d 1145 (2d Cir. 1995) ................................................................. 19, 21

*Bryant v. N.Y. State Educ. Dep't,*
  692 F.3d 202 (2d Cir. 2012) ................................................................. 14

*Bunting v. Fischer,*
  2016 WL 4939389 (W.D.N.Y. 2016) ................................................................. 11

*Camac v. Long Beach City Sch. Dist.,*
  2011 WL 3030345 (E.D.N.Y. 2011) ................................................................. 13

*Campeggi v. Arche Inc.,*
  2016 WL 4939539 (S.D.N.Y. 2016) ................................................................. 23

*Canete v. Metro. Transportation Auth.,*
  2018 WL 4538897 (S.D.N.Y. 2018) ................................................................. 8

*Cincotta v. Hempstead U.F.S.D.,*
  2016 WL 4536873 (E.D.N.Y. 2016) ................................................................. 9

*Crichlow v. Fischer,*
  2017 WL 920753 (W.D.N.Y. 2016) ................................................................. 11

*Cuite v. Winthrop Univ. Hosp.,*
  2007 WL 2582135 (E.D.N.Y. 2007) ................................................................. 23

*Cummings v. City of New York,*
  2020 WL 882335 (S.D.N.Y. 2020) ................................................................. 24

*Daly v. Kochanowicz,*
  67 A.D.3d 78, 884 N.Y.S.2d 144 (2d Dep't 2009) ................................................................. 22

*D'Annunzio v. Ayken, Inc.,*
  876 F. Supp. 2d 211 (E.D.N.Y. 2012) ................................................................. 19

*DC v. Valley Cent. Sch. Dist.,*
  2011 WL 3480389 (S.D.N.Y. 2011) ................................................................. 7

*Delaware State College v. Ricks,*
  449 U.S. 250 (1980) ................................................................. 11

iii

*DeMorcy v. City of New York*,
137 A.D.2d 650, 524 N.Y.S.2d 742 (2d Dep't 1988) ...................................... 8

*Dimitracopoulos v. City of New York*,
26 F.Supp.3d 200 (E.D.N.Y. 2014) ............................................................ 8, 9

*DiRuzza v. Lanza*,
685 F. App'x 34 (2d Cir. 2017) ...................................................................... 7

*DiRuzza v. Vill. of Mamaroneck, N.Y.*,
2014 WL 6670101 (S.D.N.Y. 2014) ............................................................... 7

*Dix v. City of New York*,
2002 WL 31175251 (S.D.N.Y. 2002) ............................................................ 20

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018) .......................................................... 22

*Dunson v. Tri-Maintenance & Contractors, Inc.*,
171 F.Supp.2d 103 (E.D.N.Y. 2001) ........................................................... 21

*Ellis v. Kelly*,
2019 WL 1243760 (E.D.N.Y.  2019) ............................................................ 11

*Farid v. Ellen*,
593 F.3d 233 (2d Cir. 2010) ........................................................................ 15

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) ........................................................................ 15

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015) ........................................................................ 11

*Green v. Dep't of Educ. of City of New York*,
2019 WL 3432306 (S.D.N.Y. 2019) ............................................................. 14

*Grillo v. New York City Transit Auth.*,
291 F.3d 231 (2d Cir. 2002) ........................................................................ 12

*Hardy v. N.Y.C. Health & Hosp. Corp.*,
164 F.3d 789 (2d Cir. 1999) ..................................................................... 6, 7

*Harhay v. Town of Ellington Bd. of Educ.*,
323 F.3d 206 (2d Cir. 2003) ........................................................................ 12

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ................................................................................ 16

*Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*,
    230 F. Supp. 3d 88 (E.D.N.Y. 2017) ...................................................... 8

*Harris v. City of New York*,
    186 F.3d 243 (2d Cir. 1999) ........................................................... 10, 11

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
    101 F.3d 877 (2d Cir. 1996) ........................................................... 12, 13

*Houraney v. Burton & Associates, P.C.*,
    2010 WL 3926907 (E.D.N.Y. 2010) ...................................................... 20

*Howell v. N.Y. Post Co.*,
    81 N.Y.2d 115 (1993) ............................................................................ 25

*Ingber v. New York City Dep't of Educ.*,
    2014 WL 6888777 (S.D.N.Y. 2014) ...................................................... 14

*Jackson v. City of New York*,
    2014 WL 1010785 (E.D.N.Y. 2014) ...................................................... 25

*Jewell v. City of New York*,
    1995 WL 86432 (S.D.N.Y. 1995) ............................................................ 8

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
    296 A.D.2d 103, 744 N.Y.S.2d 384 (1st Dept. 2002) ............................ 23

*Jones v Parmley*,
    465 F.3d 46 (2d Cir. 2006) .................................................................... 21

*King v. New York City Emps. Ret. Sys.*,
    2015 WL 4718004 (E.D.N.Y. 2015) ........................................................ 9

*Kneitel v. Silvery*,
    2018 WL 526486 (E.D.N.Y. 2018) .......................................................... 9

*Kosson v. Algaze*,
    203 A.D.2d 112, 610 N.Y.S.2d 227 (1st Dept. 1994) ............................ 23

*Langenkamp v. Olson*,
    628 Fed. Appx. 50 (2d Cir. 2015) .......................................................... 20

*Leneau v. Ponte,*
2018 WL 566456 (S.D.N.Y. 2018) ................................................ 16

*Lener v. Hempstead Pub. Sch.,*
55 F. Supp. 3d 267 (E.D.N.Y. 2014) ............................................. 15

*Lima v. New York City Dep't of Educ.,*
2013 WL 3325002 (E.D.N.Y. 2013) ................................................ 7

*Littlejohn v. City of New York,*
795 F.3d 297 (2d Cir. 2015) ....................................................... 15

*Locurto v. Safir,*
264 F.3d 154 (2d Cir. 2001) ....................................................... 12

*Lombard v. Booz–Allen & Hamilton, Inc.,*
280 F.3d 209 (2d Cir. 2002) ....................................................... 24

*Mobyed v. New York City Transit,*
2011 WL 2847416 (E.D.N.Y. 2011) ............................................. 12

*Monserrate v. New York State Senate,*
599 F.3d 148 (2d Cir. 2010) ....................................................... 14

*Mordukhaev v. Daus,*
457 F. App'x 16 (2d Cir. 2012) ................................................... 13

*Mullenix v. Luna,*
136 S.Ct. 305 (2015) ................................................................. 17

*Nakahata v. New York–Presbyterian Healthcare System,*
723 F.3d 192 (2d Cir. 2013) ....................................................... 22

*O'Connor v. Pierson,*
426 F.3d 187 (2d Cir. 2005) ....................................................... 12

*Ortiz v. McBride,*
380 F.3d 649 (2d Cir. 2004) ....................................................... 11

*Park Knoll Assocs. v. Schmidt,*
59 N.Y.2d 205, 464 N.Y.S.2d 424 (1983) .................................... 20

*Pasternack v. Lab'y Corp. of Am. Holdings,*
807 F.3d 14 (2d Cir. 2015) ......................................................... 24

*Pearson v. Callahan*,
 555 U.S. 223 (2009) ...................................................................... 16, 17, 18

*Perros v. Cty. of Nassau*,
 238 F. Supp. 3d 395 (E.D.N.Y. 2017) .......................................... 14

*Phelan v. Huntington Tri–Village Little League, Inc.*,
 57 A.D.3d 503 (2d Dep't 2008) ...................................................... 21

*Plumhoff v. Rickard*,
 572 U.S. 765 (2014) ........................................................................ 17

*Povoski v. Lacy*,
 2017 WL 9511094 (N.D.N.Y. 2017) ............................................ 11

*Premium Mortg. Corp. v. Equifax, Inc.*,
 583 F.3d 103 (2d Cir. 2009) .......................................................... 21

*Quoquoi v. New York City Dep't of Educ.*,
 2012 WL 2394825 (E.D.N.Y. 2012) .............................................. 6

*Regeda v. City of New York*,
 2012 WL 7157703 (E.D.N.Y. 2012) ............................................ 25

*Reichle v. Howards*,
 566 U.S. 658 (2012) ........................................................................ 17

*Richard v. Leclaire*,
 2017 WL 9511181 (N.D.N.Y. 2017) ............................................ 11

*Rivera-Powell v. New York City Bd. of Elections*,
 470 F.3d 458 (2d Cir. 2006) .......................................................... 14

*Rosenberg v. MetLife, Inc.*,
 493 F.3d 290 (2d Cir. 2007) .......................................................... 20

*Ruane v. Cty. of Suffolk*,
 923 F. Supp. 2d 454 (E.D.N.Y. 2013) .......................................... 10

*Santiago v. Newburgh Enlarged City Sch. Dist.*,
 434 F. Supp. 2d 193 (S.D.N.Y. 2006) ............................................ 7

*Sebastiani v. Brooklyn Hosp. Ctr.*,
 2019 WL 3281010 (E.D.N.Y. 2019) ............................................ 19

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir.2006) ................................................................... 14, 15

*Semper v. New York Methodist Hosp.*,
    786 F. Supp. 2d 566 (E.D.N.Y. 2011) ................................................... 25

*Sheffield v. Roslyn Union Free Sch. Dist.*,
    2014 WL 4773993 (E.D.N.Y. 2014) ...................................................... 19, 21

*Silverman v. Household Fin. Realty Corp. of New York*,
    979 F. Supp. 2d 313 (E.D.N.Y. 2013) ................................................... 21, 22

*Singleton v. City of N.Y.*,
    632 F.2d 185 (2d Cir. 1980) ................................................................... 10

*Squicciarini v. Vill. of Amityville*,
    2019 WL 1232093 (E.D.N.Y. 2019) ...................................................... 14

*Stewart v. Schiro*,
    2015 WL 1854198 (E.D.N.Y. 2015) ...................................................... 15

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999) ................................................................... 25

*Thomas v. New York City Dep't of Educ.*,
    938 F. Supp. 2d 334 (E.D.N.Y. 2013) ................................................... 24

*Thorsen v. Sons of Norway*,
    996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................... 19, 21

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015) ................................................................... 17

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ..................................................................... 23

*Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*,
    2017 WL 4122616 (E.D.N.Y. 2017) ...................................................... 10, 11

*Viteritti v. Inc. Vill. of Bayville*,
    831 F. Supp. 2d 583 (E.D.N.Y. 2011) ................................................... 9

*Wagschal v. Skoufis*,
    2020 WL 1033873 (S.D.N.Y. 2020) ...................................................... 18

*Wanczowski v. City of New York,*
588 N.Y.S.2d 1011 (1992) ....................................................................... 8

*Weslowski v. Zugibe,*
14 F. Supp. 3d 295 (S.D.N.Y. 2014) ................................................... 12, 13

*Whittle v. Ulloa,*
2016 WL 7351895 (S.D.N.Y. 2016) ....................................................... 7

*Wilson v. New York,*
2017 WL 9674497 (E.D.N.Y. 2017) ...................................................... 12

*Worrell v. City of New York,*
2014 WL 1224257 (E.D.N.Y. 2014) ...................................................... 15

*Ying Li v. City of New York,*
246 F. Supp. 3d 578 (E.D.N.Y. 2017) ............................................... 16, 17

*Young v. Sw. Airlines Co.,*
409 F. Supp. 3d 110 (E.D.N.Y. 2017) ................................................... 26

*Zinermon v. Burch,*
494 U.S. 113 (1990) ............................................................................ 14

STATUTES

N.Y. Educ. Law § 913 .............................................................................. 3
N.Y. Educ. Law § 3020 .......................................................................... 1, 5
N.Y. Educ. Law § 3813 .......................................................................... 6, 8, 9

RULES

Fed. R. Civ. P. 9 ..................................................................................... 22
Fed. R. Civ. P. 12 ..................................................................................... 6

# PRELIMINARY STATEMENT

Plaintiff Debra Becker works for Nassau BOCES as a speech pathologist. Her claims stem from disciplinary charges brought against her under New York Education Law § 3020-a. Nassau BOCES asserted plaintiff was unfit for duty and could not perform the functions of her job. Plaintiff also sues co-defendants Dr. Randall Solomon and his medical practice because Nassau BOCES relied on Dr. Solomon's medical determination in the process. In May 2018, an independent hearing officer found in plaintiff's favor in the § 3020-a proceeding. Plaintiff waited nearly three years to file suit. Because of this delay, most of plaintiff's claims are barred by the applicable statute of limitations. Some are also barred by plaintiff's failure to fully comply with Education Law § 3813's notice of claim requirement.

Notwithstanding these procedural barriers, all of plaintiff's claims fail on the merits based on plaintiff failure to state a viable claim. Plaintiff's Fourteenth Amendment procedural due process claim is barred by the failure to exhaust administrative remedies. Plaintiff also fails to allege, much less demonstrate, she was denied due process to state a valid claim. With no underlying due process violation, the *Monell* claim against Nassau BOCES also cannot stand. And there can be no due process claim against individual defendants Dr. Robert Dillon, Kim Scharoff, and Patricia Schwetz because the Amended Complaint contains no factual allegations demonstrating their personal involvement in the alleged constitutional violations. They should be afforded qualified immunity.

Plaintiff's smorgasbord of state law claims must also be dismissed for failure to state a plausible claim. The state law due process claim fails because the NYS Constitution provides no private cause of action where an alternative remedy exists under federal law.

The defamation claim fails because the Amended Complaint lacks the necessary allegations and because the allegedly defamatory statements are absolutely privileged or, at a minimum, protected by a qualified privilege.

The factual allegations do not satisfy the heightened pleading standard for a common law fraud claim, and the allegations that do exist simply do not fit the mold of a such a claim.

The tortious interference claim cannot lie because the only contract alleged is an employment contract with defendants who cannot, as a matter of law, have tortiously interfered with their own contract.

The negligence claim is also a non-starter. Conclusory allegations of negligence cannot withstand a motion to dismiss, and the allegation of intentional conduct further undermines such a theory of liability.

The intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims must be dismissed because plaintiff cannot satisfy the requisite elements for these claims, and because these claims are duplicative of, and thus subsumed by, the defamation claim. Also, the IIED claim against Nassau BOCES is barred by public policy.

## STATEMENT OF FACTS[1]

Nassau BOCES hired Becker in 1989 as a Speech and Hearing teacher for students with disabilities. (Ex. A, ¶ 8.) In 2008, plaintiff was assigned to teach at Nassau BOCES' Carmen Road School to provide speech services to special education students. (Ex. A, ¶¶ 8, 23.) Since then, plaintiff has sustained various work-related and non-work-related injuries that required her to miss time from work. (*Id.*, ¶¶ 30-35.) Plaintiff claims she experienced a lot of pain because of these many injuries and that they required her to take pain medication. (*Id.*, ¶ 37.)

---

[1] The facts set forth herein are taken directly from plaintiff's amended complaint and are accepted as true for purposes of this motion only, except where contradicted by documentary evidence.

In November 2015, plaintiff received a letter directing under NY Education Law § 913 to attend a psychiatric evaluation on February 24, 2016 at Dr. Solomon's office, to determine if she was fit to perform her job duties. (*Id.*, ¶ 39.) Plaintiff claims her supervisor told her the evaluation was routine and that it was a Nassau BOCES policy to evaluate an employee who takes multiple Workers Compensation leaves of absence. (*Id.*, ¶ 40.) Plaintiff's supervisor also allegedly said plaintiff was being evaluated because of her time and attendance records. (*Id.*)

Plaintiff claims Nassau BOCES hired the evaluating psychiatrist, Dr. Solomon, without a bid and in violation of municipal procurement procedures. (*Id.*, ¶¶ 90-91.) She claims this was done deliberately and arbitrarily to find her unfit to work. (*Id.*, ¶¶ 91-92.)

On February 12, 2016, then-Executive Director of Human Resources Dr. Tracey Nekulak allegedly told plaintiff she had started an investigation into her time and attendance. (*Id.*, ¶ 44.)

On February 24, 2016, plaintiff appeared for her evaluation at Dr. Solomon's office. (*Id.*, ¶ 45.) She claims it was "more like an interrogation than an evaluation." (*Id.*) And she claims she was "coerced' into signing a HIPAA release for her medical records. (*Id.*, ¶ 46.) She claims the release form Dr. Solomon used was non-compliant with the official government-issued form. (*Id.*) Plaintiff also claims she was not advised she could bring a lawyer or union representative. (*Id.*, ¶¶ 48-49.) She would have retained counsel if she knew that was an option and thus believes she would not have signed a HIPAA release. (*Id.*, ¶ 49.)

On June 3, 2016, Dr. Solomon provided his § 913 psychiatric evaluation report, which plaintiff had the opportunity to review. (*Id.*, ¶ 51.) Plaintiff alleges the report erroneously concluded she was not mentally fit to return to her teaching position. (*Id.*) Plaintiff claims Dr. Solomon's report labeled her a drug addict and concluded she had seven disorders, including an anti-social personality disorder. (*Id.*, ¶ 52.)

Plaintiff attended a meeting at Nassau BOCES and it was recommended that she attend counseling through the Employee Assistance Program over the summer and potentially return to teaching in September. (*Id.*, ¶¶ 54-56.) Plaintiff participated in the program that summer, meeting with Theresa Rauh-Hoell, a social worker/therapist. (*Id.*, ¶ 57.) Rauh-Hoell allegedly informed Nassau BOCES that plaintiff was fit for work. (*Id.*)

Plaintiff claims Nassau BOCES made her see Dr. Solomon on October 5, 2016, and kept her on administrative leave. (*Id.*, ¶ 58.) She claims Nassau BOCES took this action despite receiving three letters from mental health professionals deeming her fit for work. (*Id.*) Plaintiff attended her October 5th evaluation with Dr. Solomon and brought Dr. Briglio, her own psychologist of three years. (*Id.*, ¶ 63.) Plaintiff claims the appointment was originally scheduled for 9:00 am and was somehow changed to 8:00 am without her knowledge. (*Id.*) She claims she was reprimanded for being late. (*Id.*, ¶ 64.) Plaintiff also claims that, during the evaluation, Dr. Solomon kept insinuating she was being dishonest about addiction. (*Id.*, ¶ 66.) Plaintiff claims Dr. Solomon ignored the opinion of her doctors and accused them of "treating her irresponsibly." (*Id.*, ¶¶ 67-68.) Plaintiff had to undergo a urine test during her October 5th evaluation. (*Id.*, ¶¶ 71-72.) She claims Dr. Solomon falsely accused her of submitting someone else's urine. (*Id.*, ¶ 71.) She also claims Dr. Solomon falsely opined the urine sample showed excessive alcohol abuse and indicated plaintiff was using drugs that would not show up in a urine test. (*Id.*, ¶ 72.) She further claims Dr. Solomon falsely accused her of malingering. (*Id.*, ¶ 73.)

On October 24, 2016, Dr. Solomon provided a report containing his findings. (*Id.*, ¶ 74.) He again found plaintiff unfit to return to work. (*Id.*) Plaintiff alleges Dr. Briglio, disagreed with Dr. Solomon's reports and concluded plaintiff's use of pain medication was not a dependence, but a necessity because of her shoulder surgery. (*Id.*, ¶ 75.)

Plaintiff claims Nassau BOCES erroneously relied on Dr. Solomon's reports to conclude she was unfit to return to teaching. (*Id.*, ¶ 76.) Nassau BOCES reassigned plaintiff to the Robert E Lupinskie Center for Curriculum, Instruction, and Technology in March of 2017. (*Id.*, ¶ 78.) Her supervisors were defendants Kim Scharoff and Patricia Schwetz. (*Id.*) Plaintiff alleges Scharoff and Schwetz belittled and subjected her to ridicule. (*Id.*, ¶¶ 79, 81.) They made comments about denying bathroom visits without a doctor's note, denying plaintiff a chair with wheels, and not allowing her to speak to anyone outside of her one-hour lunch break. (*Id.*, ¶¶ 79-80.)

Plaintiff asserts she was injured when defendants presented "false and defamatory charges" against her in the disciplinary charges dated October 26, 2017. (*Id.*, ¶ 82.) A § 3020-a hearing was held on January 31, February 12, and February 16, 2018. (*Id.*, ¶ 87.) On May 3, 2018, the hearing officer found in plaintiff's favor. (*Id.*, ¶¶ 87, 94.) The hearing officer concluded Dr. Solomon was improperly retained because he never bid for his work. (*Id.*, ¶ 94.) The hearing officer also disagreed with Dr. Solomon's opinion that plaintiff was unfit to perform her work. (*Id.*)

## PROCEDURAL HISTORY

On or about May 21, 2018, Plaintiff served a notice of claim. (Ex. A, ¶ 97; Ex. B[2].) The notice of claim named only Dr. Dillon, Ms. Nekulak, Ms. Scharoff, and Ms. Schwetz in their individual and official capacities. (Ex. B.) It did not name Nassau BOCES itself. (*Id.*) And the notice of claim did not raise negligence, NIED, or fraud as theories of liability. (*Id.*) Plaintiff appeared for a General Municipal Law § 50-h examination on November 12 and November 19, 2018. (Ex. A, ¶ 98.)

---

[2] For the reasons set forth in the Nassau BOCES defendants' August 19, 2021 letter to the Court (Dkt. No. 14), which the Nassau BOCES defendants incorporate into this motion by reference, the Court may properly consider the Notice of Claim plaintiff served on or about May 21, 2018.

On March 19, 2021, nearly three years after serving a notice of claim, plaintiff commenced this action in the Nassau County Supreme Court. (*See* Dkt. No. 1-1.) The Nassau BOCES defendants timely removed the case to this Court. (*See* Dkt. No. 1.)

On May 31, 2021, the Nassau BOCES defendants filed a pre-motion letter in anticipation of moving to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (6). (Dkt. No. 6.) And on June 8, Plaintiff filed an opposition letter in response. (Dkt. No. 8.) On July 19, 2021, the parties appeared for a pre-motion conference. And at end of that conference, plaintiff requested leave to amend her complaint. Plaintiff filed an Amended Complaint on August 17, 2021. The Amended Complaint contains a new cause of action that was not pled in the original pleading: a tortious interference with employment claim. (Ex. A, ¶¶ 182-191; *see also* Dkt. No. 13-1, ¶¶ 182-191.)

## ARGUMENT

I.    PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE OF CLAIM REQUIREMENT

### A.   The Notice of Claim Does Not Name Nassau BOCES

"[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis in original); *see also Quoquoi v. New York City Dep't of Educ.*, 2012 WL 2394825, at *7 (E.D.N.Y. 2012).

Under New York Education Law § 3813, a notice of claim is a condition precedent to bringing an employment discrimination claim against a school district, board of education, board of trustees, or school officer. *See Benedith v. Malverne U.F.S.D.*, 38 F.Supp.3d 286, 311 (E.D.N.Y. 2014) (*citing* N.Y. Educ. Law § 3813(1)).

"New York State courts strictly construe the notice of claim requirement." *DC v. Valley Cent. Sch. Dist.*, 2011 WL 3480389, at *1 (S.D.N.Y. 2011) (citing *Hardy,* 164 F.3d at 793); *see also Lima v. New York City Dep't of Educ.*, 2013 WL 3325002, at *5 (E.D.N.Y. 2013) ("[N]otice

of claim requirements are construed strictly by New York state courts and failure to abide by their terms mandates dismissal of the action.") (citation omitted). And part of that notice of claim provision requires a plaintiff to properly identify potential defendants. In fact, courts must construe the notice of claim strictly to ensure municipal defendants are properly named as respondents in a notice of claim. *See DiRuzza v. Vill. of Mamaroneck, N.Y.*, 2014 WL 6670101, at *2 (S.D.N.Y. 2014) (*citing DC v. Valley Cent. Sch. Dist.,* 2011 WL 3480389, at *2), *aff'd sub nom. DiRuzza v. Lanza*, 685 F. App'x 34 (2d Cir. 2017).

Failure to comply with the notice of claim requirement deprives the court of subject matter jurisdiction and operates as a complete bar to the action. *See Whittle v. Ulloa*, 2016 WL 7351895, at *6 (S.D.N.Y. 2016). While a state court has jurisdiction to grant leave to file a late notice of claim, such relief is impermissible where, as here, the statute of limitations period has long passed. *See Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006).

In her notice of claim, plaintiff named the individual defendants but failed to name Nassau BOCES itself. Because the notice of claim requirement must be strictly construed, plaintiff's failure to properly identify Nassau BOCES as a defendant warrants dismissal of the state law claims against Nassau BOCES.

**B.  The Notice of Claim Does Not Include Negligence, NIED, or Fraud**

Plaintiff's negligence, NIED, and fraud claims must be dismissed based on plaintiff's failure to assert these theories of liability in her notice of claim.

A notice of claim must set forth the "nature of the claim" and theories of liability. *See A.W. by E.W. v. New York Dep't of Educ.,* 2021 WL 611409, at *5 (E.D.N.Y. 2021). "Any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." *Jewell v. City of New York*, 1995 WL 86432, at *1 (S.D.N.Y. 1995) (*citing DeMorcy v. City of New*

*York,* 137 A.D.2d 650, 650–51, 524 N.Y.S.2d 742, 743 (2d Dep't 1988)); *see also A.W. by E.W.*, 2021 WL 611409, at *5 (dismissing false arrest claim because it was not listed as a theory of liability in plaintiff's notice of claim) (collecting cases); *Canete v. Metro. Transportation Auth.*, 2018 WL 4538897, at *9 (S.D.N.Y. 2018) (dismissing state constitutional claims where "the notice of claim was silent as to these non-intuitive theories of liability") (citing *Wanczowski v. City of New York*, 588 N.Y.S.2d 1011 (1992)).

Here, the notice of claim did not provide adequate notice of negligence or fraud. There were no allegations, either express or implied, that the Nassau BOCES defendants engaged in negligence. On the contrary, the allegations in the notice of claim characterizes defendants' alleged conduct as "deliberate" and "malicious" in nature. (Ex. B.) These characterizations do not mesh with a theory of liability based on negligence. And the notice of claim simply does not contain the word "fraud" or any allegations suggesting plaintiff intended to assert such a theory of liability.

## II.   ALL OF PLAINTIFF'S STATE LAW CLAIMS EXCEPT FOR FRAUD ARE TIME-BARRED

Even had plaintiff fully complied with the notice of claim requirement, all of her state law claims except for the fraud claim still must be dismissed as time-barred. State law claims against school districts and boards of education carry a one-year statute of limitations. *See* N.Y. Educ. Law § 3813(1), (2-b); *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017) (citing *Dimitracopoulos v. City of New York*, 26 F.Supp.3d 200, 211 (E.D.N.Y. 2014)). This also applies to claims against organization-wide staff such as the school officials named here. *See Dimitracopoulos*, 26 F. Supp. 3d at 211 (holding the shorter one-year statute of limitations applies to school officers) (quoting N.Y. Educ. Law § 3813(1)).

Since plaintiff did not file her complaint until March 19, 2021, any state law claims arising prior to March 19, 2020 are time-barred. *Cincotta v. Hempstead U.F.S.D.*, 2016 WL 4536873, at

*18 (E.D.N.Y. 2016). The challenged conduct all took place between November 2015 and May 2018 and the deadline to sue long passed.

## III.    PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM MUST BE DISMISSED

Plaintiff's Fourteenth Amendment[3] procedural due process claim fails on several procedural and substantive grounds.

### A.  A Portion of Plaintiff's Procedural Due Process Claim is Time-Barred

Plaintiff's procedural due process claim is governed by a three-year statute of limitations. *See King v. New York City Emps. Ret. Sys.*, 2015 WL 4718004, at *13 (E.D.N.Y. 2015). Claims that are time-barred by this three-year statute of limitations must be dismissed. *See Kneitel v. Silvery*, 2018 WL 526486, at *3 (E.D.N.Y. 2018) (holding plaintiff's constitutional claims must be dismissed as time-barred)*; Ashley v. Eastchester Police Dep't,* 2012 WL 234399, at *2 (S.D.N.Y. 2012) (dismissing plaintiff's federal due process claim as time-barred).

Plaintiff alleges her due process rights were violated when: (1) she had to undergo psychiatric evaluations with Dr. Solomon in February and October of 2016; (2) when Nassau BOCES served her with fabricated and unfounded charges in October of 2017; and (3) when Nassau BOCES placed her on a suspension that exceeded the maximum allowable amount of time.

Any due process claim based on Dr. Solomon's evaluations are time-barred since those evaluations took place in June and October 2016 and the statute of limitations would have expired in 2019. Such time-barred claims must be dismissed. *Id.*

The continuing violation doctrine cannot save this portion of plaintiff's procedural due process claim from dismissal. Under the continuing violation doctrine, "where a plaintiff can

---

[3] The Amended Complaint also references the 5th Amendment. To the extent plaintiff asserts a procedural due process claim under the 5th Amendment, it must be dismissed because "the Fifth Amendment only applies to actions by the Federal Government. *See Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011) (collecting cases).

demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside of the limitations period." *Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013) (citations and internal quotations omitted). However, "courts of this circuit consistently have looked unfavorably on continuing violation arguments … and have applied the theory only under compelling circumstances. *Id*. (quoting *Blankman v. Cnty. of Nassau,* 819 F.Supp. 198, 207 (E.D.N.Y. 1993)); *Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, 2017 WL 4122616, at *4 (E.D.N.Y. 2017) (citation omitted), *aff'd,* 741 F. App'x 39 (2d Cir. 2018).

"[T]he mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." *Ruane,* 923 F. Supp. 2d at 459 (citing *Blankman,* 819 F.Supp. at 207); *see also Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("We [the Second Circuit] have made it clear that a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act.") (citation omitted). "[T]he Second Circuit has made clear that characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as a series of interlocking events does not postpone accrual of claims based on individual wrong acts." *Ruane*, 923 F. Supp. 2d at 458 (quoting *Singleton v. City of N.Y.,* 632 F.2d 185, 192 (2d Cir. 1980)). "Nor can an otherwise barred claim be rendered timely by the mere continuation of the claimant's employment." *Harris*, 186 F.3d at 250 (citing *Delaware State College v. Ricks,* 449 U.S. 250, 257 (1980)).

While not completely prohibited, "the weight of authority in the Second Circuit appears to hold that the continuing violation doctrine may not be applied to Section 1983 civil rights claims that do not involve allegations of discrimination." *Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, 2017

WL 4122616, at *5 (E.D.N.Y. 2017) (citation omitted), *aff'd,* 741 F. App'x 39 (2d Cir. 2018); *Ellis v. Kelly*, 2019 WL 1243760, at *6 (E.D.N.Y. 2019).

The continuing violation doctrine simply does not apply to plaintiff's Fourteenth Amendment procedural due process claim. A procedural due process claim arises "when the defendants have deprived the plaintiff of a liberty interest as a result of insufficient process." *Bunting v. Fischer*, 2016 WL 4939389, at *3 (W.D.N.Y. 2016) (citing *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004)). "Each decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing that he was entitled to." *Id.* (citing *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015); *see also Povoski v. Lacy*, 2017 WL 9511094, at *8 (N.D.N.Y. 2017) (dismissing plaintiff's due process claim as time-barred because "each decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to") (quoting *Crichlow v. Fischer*, 2017 WL 920753, at *5 (W.D.N.Y. 2016)) *Richard v. Leclaire*, 2017 WL 9511181, at *10 (N.D.N.Y. 2017) ("[T]he continuing violation doctrine has been found inapplicable in the case of Fourteenth Amendment claims arising out of disciplinary hearings, because each decision made without due process is a discrete violation, and the statute of limitations begins to run the date that the plaintiff was denied the full and fair hearing he was entitled to.") (internal quotations omitted) (collecting cases).

The portion of plaintiff's procedural due process claim based on Dr. Solomon's § 913 psychiatric evaluations must be dismissed as time-barred by a three-year statute of limitations.

### B. Plaintiff Failed to Exhaust Her Administrative Remedies

Plaintiff's procedural due process claim is also barred because she failed to exhaust her administrative remedies. As a union member, plaintiff was subject to a collective bargaining

agreement. (Ex. A, ¶¶ 38, 41.) Courts have held that a collective bargaining agreement's mandated grievance procedure provides an adequate post-deprivation process. *See O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (CBA-mandated grievance procedures are routinely held to provide adequate post-deprivation process") (collecting cases); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) (CBA grievance and arbitration procedure satisfies due process); *Wilson v. New York*, 2017 WL 9674497, at *21 (E.D.N.Y. 2017) ("The Second Circuit has held that CBA-mandated arbitration procedures provide adequate post deprivation process for constitutional purposes.") (collecting cases); *Mobyed v. New York City Transit*, 2011 WL 2847416, at *4 (E.D.N.Y. 2011) ("[T]he CBA grievance procedures are adequate to protect plaintiff's assumed property interest, and they afforded plaintiff the requisite process.") (citing *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008).

Plaintiff also had the opportunity to pursue an Article 78 petition, a remedy that also "constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001); *see also Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy") (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880–81 (2d Cir. 1996)); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 315 (S.D.N.Y. 2014) ("For state employees in New York, an article 78 proceeding … constitutes a wholly adequate-post deprivation hearing for due process purposes.") (internal quotations and citations omitted).

Plaintiff cannot overcome this hurdle, even if "an Article 78 proceeding may not be able to recover the same relief that he could in a § 1983 suit." *Weslowski*, 14 F. Supp. 3d at 315 (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881). This is also the case "even if a plaintiff cannot initiate an Article 78 proceeding outside of Article 78's four-month statute of

limitations." *Id.*; *see also Mordukhaev v. Daus*, 2010 WL 3792044, at *7 (S.D.N.Y. 2010) ("A plaintiff's failure to commence an Article 78 proceeding within the four-month limitations period does not prevent this Court from taking into account the availability of such when determining whether he has been afforded due process."), *aff'd*, 457 F. App'x 16 (2d Cir. 2012).

Because plaintiff had adequate post-deprivation remedies, she may not use Constitutional due process to challenge her evaluations with Dr. Solomon, the 3020-a charges and hearing, or her suspension. Plaintiff's failure to take advantage of these post-deprivation remedies cannot save her procedural due process claim from dismissal. On the contrary, plaintiff's failure to exhaust her administrative remedies strips this Court of subject matter jurisdiction over the procedural due process claim and thus mandates its dismissal. *See Camac v. Long Beach City Sch. Dist.*, 2011 WL 3030345, at *13 (E.D.N.Y. 2011) ("Because plaintiffs have failed to exhaust their administrative remedies … this Court lacks subject matter jurisdiction over plaintiffs' section 1983 procedural due process claim and it is dismissed).

### C.  Plaintiff Fails to State a Procedural Due Process or Stigma Plus Claim

Notwithstanding the above-mentioned procedural bars, the due process claim also fails because plaintiff cannot satisfy the requisite elements of the claim.

A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest of which plaintiff was deprived (2) without due process. *See Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (*quoting Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)). "The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, only against deprivations without due process of law." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464–65 (2d Cir. 2006) (citations and internal quotations omitted); *see also Squicciarini*

*v. Vill. of Amityville*, 2019 WL 1232093, at *7 (E.D.N.Y. 2019) ("Section 1983 is not a vehicle for the assertion of deprivations that never actually happen."). "To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell*, 470 F.3d at 464-65 (quoting *Zinermon v. Burch,* 494 U.S. 113, 126 (1990)). "Under the Due Process Clause of the Fourteenth Amendment, before a tenured public employee can be terminated, the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Green v. Dep't of Educ. of City of New York*, 2019 WL 3432306, at *8 (S.D.N.Y. 2019).

The Amended Complaint reflects that plaintiff was provided with written notice of the charges being brought against her, and there was a hearing in which she heard Nassau BOCES' evidence against her and presented her own arguments and evidence. This is all the process plaintiff was due under the Fourteenth Amendment. *Ingber v. New York City Dep't of Educ.*, 2014 WL 6888777, at *1 (S.D.N.Y. 2014) (no deprivation of due process rights where plaintiffs alleged they received written notices and pre-termination hearings). While plaintiff might disagree with the alleged actions of the Nassau BOCES defendants and Dr. Solomon, her discontent does not trigger a due process violation, especially where her own pleading confirms she was provided with the due process she was entitled to. The claim must be dismissed.

Further, to the extent plaintiff is asserting a liberty interest claim, the "availability of adequate process defeats a sigma-plus claim." *See Monserrate v. New York State Senate*, 599 F.3d 148 (2d Cir. 2010) (quoting *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). Further, the individual defendants lacked the ability to provide any process or terminate employment, those powers lied with Nassau BOCES itself. *See Anemone v. Metropolitan Transp. Authority*, 410

F.Supp.2d 255 (S.D.N.Y. 2005). Additionally, plaintiff cannot show the "plus" requirement as plaintiff was not terminated and did not lose a tangible interest. *See Worrell v. City of New York*, 2014 WL 1224257, * 7 (E.D.N.Y. 2014) (citations omitted)

### D. Plaintiff Fails to State a *Monell* Claim Against Nassau BOCES

There is no *Monell* claim absent a constitutional violation. *See Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 (E.D.N.Y. 2014) ("[W]hen a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well.") (*citing Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006)); *Stewart v. Schiro*, 2015 WL 1854198, at *17 (E.D.N.Y. Apr. 22, 2015) (plaintiff's failure to demonstrate underlying constitutional violation was fatal to his *Monell* claim). As plaintiff suffered no violation of her constitutional rights, (*see infra* Point III(c)), her *Monell* claim must be dismissed.

### E. Plaintiff Does Not Plead Dillon, Scharoff, or Schwetz's Personal Involvement

The Court should dismiss plaintiff's Section 1983 procedural due process claims against individual defendants Dillon, Scharoff, and Schwetz because the Amended Complaint does not allege they were personally involved in the alleged constitutional violations.

"An individual may be held liable under § 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotations omitted) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir. 2004)); *see also Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

There are no factual allegations in the Amended Complaint that Dillon was personally involved in the alleged constitutional violations. In fact, the pleading includes no specific factual allegations relating to Dillon. (*See gen.*, Ex. A.) The due process claims against Scharoff and Schwetz fail for the same reason. There are no allegations suggesting they were involved in the decision to subject plaintiff to an evaluation, disciplinary charges, or suspension. (*Id.*)

Although plaintiff references "Defendants" collectively throughout the Amended Complaint, that does not satisfy the personal involvement requirement. On the contrary, "Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a [§ 1983] claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (collecting cases); *see also Leneau v. Ponte*, 2018 WL 566456, at *15 (S.D.N.Y. 2018) ("[I]t is well settled that 'group pleading,' i.e., pleading that 'fails to differentiate as to which defendant was involved in the alleged conduct,' is insufficient to state a claim under section 1983.") (citation omitted), *appeal dismissed* (2d Cir. 2018).

### F.  The Individual Defendants Should Be Afforded Qualified Immunity

Any actions by the individual defendants were pursuant to their official duties and did not violate plaintiff's rights. They should be afforded to qualified immunity from suit on plaintiff's Section 1983 Fourteenth Amendment procedural due process claim.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011)).

The scope of qualified immunity is broad, and, it protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743 (internal citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765 (2014) (citation omitted).

"The Supreme Court's recent repeated unanimous awards of qualified immunity emphasize the narrow circumstances in which government officials may be held personally liable for their actions in suits for money damages." *Turkmen v. Hasty*, 789 F.3d 218, 281 (2d Cir. 2015). "The dispositive question is whether the violative nature of particular conduct is clearly established … [and] must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (emphasis in original). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can 'reasonably … anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658 (2012) (quoting *Anderson*, 483 U.S. at 639).

No single case suggests, under the circumstances pleaded here, that defendants violated plaintiff's clearly established and well-settled due process rights. In order to avoid qualified immunity applying, plaintiff would have to show a Supreme Court or Second Circuit case—or possibly even a "robust consensus" of other Circuits—finding a constitutional violation under the facts presented here. *See Wagschal v. Skoufis*, 2020 WL 1033873, at *10 (S.D.N.Y. 2020) (*citing*

*Ashcroft*, 563 U.S. at 742).

Plaintiff has not even demonstrated the individual Nassau BOCES defendants violated any of her constitutional rights, much less a clearly established and well-settled constitutional right. She simply cannot overcome the qualified immunity defense.

## IV. PLAINTIFF STILL FAILED TO STATE ANY STATE LAW CLAIM

Even if not time-barred, plaintiff's slate of state law claims should still be dismissed for failure to state a plausible claim.

### A. Due Process Claim Under the New York State Constitution

Plaintiff's due process claim under the New York State constitution (even if timely) is barred because the New York State Constitution provides no private cause of action where an alternative remedy exists under federal law. *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018). Since there was an available federal remedy—a remedy plaintiff pursues in this case—her identical New York State constitutional claim must be dismissed.

### B. Defamation Claim

The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must cause either special harm or constitute defamation *per se. See Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014) (collecting cases).

In the Second Circuit, a complaint alleged defamation is sufficient only "if it adequately identifies the purported communication and provides an *indication* of who made the communication, when it was made, and to whom it was communicated." *Sebastiani v. Brooklyn Hosp. Ctr.*, 2019 WL 3281010, at *4 (E.D.N.Y. 2019) (emphasis in original) (collecting cases); *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012) (citation omitted). Plaintiff

has not identified or set forth with any particularity the purported defamatory statements made by the named individuals from Nassau BOCES. Her allegations are conclusory and general. This alone bars plaintiff's defamation claim. *Id.*

Given the conclusory nature of plaintiff's defamation claim, it is difficult to discern what "defamatory statements" she even alleges and to whom she attributes them to. Plaintiff appears to point only toward statements that were made during or in connection with the §3020-a hearing. Such statements are privileged and thus cannot be the basis of a defamation claim.

"New York has long recognized that for public policy reasons, certain types of statements and communications, though defamatory, are privileged and may not serve as the basis for a claim of defamation." *Sheffield v. Roslyn Union Free Sch. Dist.*, 2014 WL 4773993, at *11 (E.D.N.Y. 2014) (citing *Boice v. Unisys Corp.,* 50 F.3d 1145, 1149 (2d Cir. 1995)).

New York law recognizes two types of privileges: qualified and absolute. *Id.* A party afforded absolute immunity "may not be sued 'no matter how malicious his state of mind.'" *Id.* A party afforded qualified immunity, on the other hand, "may be sued for defamation only if he published the statement with malice." *Id.* Whether a party is entitled to absolute immunity for alleged defamatory statements is a question of law for the court. *Id.* (citing *Aequitron Med., Inc. v. Dyro,* 999 F.Supp. 294, 297 (E.D.N.Y. 1998)).

Public officials have an absolute privilege against claims of defamation where the defamatory statements are made in the discharge of their responsibilities about matters within the ambit of their duties, particularly communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings. *See A.F.C. Enterprises v. NY City Sch. Constr. Auth.*, 2001 WL 1335010, at *12 (E.D.N.Y. 2001) (citation omitted); *see also Houraney v. Burton & Associates, P.C.*, 2010 WL 3926907, at *10 (E.D.N.Y.

2010) (collecting cases). "Absolute privilege is based upon the personal position or status of the speaker and is limited to the speaker's official participation in the processes of government." *Dix v. City of New York*, 2002 WL 31175251, at *10 (S.D.N.Y. 2002) (citing *Park Knoll Assocs. v. Schmidt,* 59 N.Y.2d 205, 208-09, 464 N.Y.S.2d 424 (1983)). Absolute privilege shields such a speaker, or writer, "from liability for an otherwise defamatory statement, regardless of the speaker or writer's motive in making the statement." *Rosenberg v. MetLife, Inc.*, 493 F.3d 290, 291 (2d Cir. 2007) (citing *Park Knoll Assocs.,* 59 N.Y.2d at 208-09).

If not absolutely privileged, plaintiff's claims are barred by the common-interest qualified privilege, which applies where a person makes a bona fide communication upon a subject in which he and the recipient both have an interest. *See Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) (citation omitted). In the workplace context, the qualified privilege protects "[c]ommunications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge." *Albert*, 239 F.3d at 272 (citations omitted); *see also Langenkamp v. Olson*, 628 Fed. Appx. 50, 53 (2d Cir. 2015). For plaintiff to overcome a qualified privilege, he must prove by a preponderance of evidence that defendants published the subject statement with actual malice. *See Dunson*, 171 F.Supp.2d at 117 (citing *Albert*, 239 F.3d at 273); *Sheffield* 2014 WL 4773993, at *11 (citing *Boice,* 50 F.3d at 1149); *cf. Jones v Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (holding New York common law grants government officials qualified immunity on state law claims where the officials' actions were undertaken in good faith or with a reasonable basis). "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Thorsen*, 996 F. Supp. 2d at 173 (quoting *Phelan v. Huntington Tri–Village Little League, Inc.,* 57 A.D.3d 503, 504–505 (2d Dep't 2008)).

Any statements that defendants made during or in connection with the §3020-a hearing are absolutely privileged. Even if somehow only protected by a qualified privilege, the defamation claim still fails because plaintiff has not, and cannot, allege actual malice. At most, she alleges she was subjected to disciplinary charges because the Nassau BOCES defendants wrongfully relied on Dr. Solomon's professional reports and, as a result, wrongfully accused her of not being fit to perform her job responsibilities. The reliance on the medical opinion of an outside physician, even if he was retained without a competitive bid process, does not suggest malice.

### C. Common Law Fraud Claim

Plaintiff's fraud claim dies on the vine. A cause of action to recover damage for common law fraud requires allegations of: (1) a false representation of fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages. *See Silverman v. Household Fin. Realty Corp. of New York*, 979 F. Supp. 2d 313, 319 (E.D.N.Y. 2013) (quoting *Premium Mortg. Corp. v. Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir. 2009)).

A plaintiff asserting a fraud claim is subject to a heightened pleading standard. "When alleging fraud, a party must state with particularity the circumstances constituting fraud." *Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 319 (E.D.N.Y. 2013) (citing Fed. R. Civ. P. 9(b)). Under this heightened standard, a plaintiff must "(1) specify the statements that plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Id.* (quoting *Nakahata v. New York–Presbyterian Healthcare System,* 723 F.3d 192, 197-98 (2d Cir. 2013)).

Courts will dismiss causes of action for fraud where the complaint violates the heightened pleading standard by only including bare and conclusory allegations with no supporting detail. *See Silverman*, 979 F. Supp. 2d at 319 (dismissing fraud claim based on plaintiff's failure to plead with

the specificity required under the federal rules or the case law); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.,* 323 F. Supp. 3d 393, 463 (S.D.N.Y. 2018) (holding plaintiff's conclusory allegations could not satisfy the heightened pleading standard for fraud claims because the allegations failed to provide defendants with notice of which misstatements were relied upon by plaintiffs); *see also Daly v. Kochanowicz*, 67 A.D.3d 78, 90, 884 N.Y.S.2d 144, 153 (2d Dep't 2009) (holding a pleading fails to state a claim for fraud if it contains no allegations about the specific misrepresentations, who made them, and when they were made) (collecting cases).

The allegations simply do not fit the mold of a common law fraud claim. Plaintiff essentially claims Nassau BOCES falsely accused her of being unfit for duty, among other things, to try to terminate her employment. This scenario does not satisfy the requisite elements of a fraud claim. Plaintiff does not allege defendants made a false representation in order to deceive her or induce reliance. She also does not allege justifiable reliance on any of the alleged misrepresentations and suffered damages as a result. The conclusory allegations of fraud do not satisfy the heightened pleading standard. *See Silverman*, 979 F. Supp. 2d at 319.

### D. Tortious Interference Claim

Plaintiff's tortious interference claim is also a non-starter. To state a claim for tortious interference with employment, a plaintiff must show (a) that a valid contract exists between plaintiff and a third party; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff. *See Cuite v. Winthrop Univ. Hosp.*, 2007 WL 2582135, at *3 (E.D.N.Y. 2007) (citation omitted).

The only contract plaintiff alleges is her employment contract with Nassau BOCES. This contract cannot serve as the basis for a tortious interference claim against Nassau BOCES "because

Defendants cannot, as a matter of law, have tortiously interfered with their own contract." *Campeggi v. Arche Inc.*, 2016 WL 4939539, at *10 (S.D.N.Y. 2016) (citing *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005) ("One asserting a tortious interference claim must … show that the defendant was not a party to the contract with which he allegedly interfered.")); *Albert*, 239 F.3d at 274 ("[T]he tort of interference with an employment contract cannot lie against the Hospital because it is a party to the alleged employment contract.").

Nor can plaintiff assert such a claim against the individual defendants, as it cannot lie against agents of the employer absent a showing they acted outside the scope of their authority and acted solely to harm plaintiff or used wrongful means to achieve the interference for personal gain. *Kosson v. Algaze*, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227 (1st Dept. 1994), *aff'd* 84 N.Y.2d 1019 (1995); *Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 110, 744 N.Y.S.2d 384 (1st Dept. 2002). The facts pleaded simply do not permit such a claim.

### E. Negligence Claim

Plaintiff's throw away negligence claim should also be rejected. The elements of a negligence claim under New York law are (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by the at breach. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). The Amended Complaint contains no specific factual allegations to support plaintiff's negligence claim, and does not even address the requisite elements of the claim, much less satisfy them. On the contrary, the amended complaint is littered with allegations of intentional conduct, and plaintiff even alleges various intentional torts. These allegations simply do not permit a parallel cause of action for negligence. Rather, plaintiff's allegations of intentional conduct cancel out the negligence claim. *See Biehner v. City of New York*,

2021 WL 878476, at *11 (S.D.N.Y. 2021) ("In this case, the plaintiff has not alleged any injury caused by the defendants' alleged breach of but except for the allegedly defamatory statements, and therefore fails to allege a valid theory of negligence.") (citing *Cummings v. City of New York*, 2020 WL 882335, at 27 (S.D.N.Y. 2020)).

### F. Intentional/Negligent Infliction of Emotional Distress Claims

Initially, public policy bars plaintiff's IIED claim against Nassau BOCES. *See Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 359 (E.D.N.Y. 2013) ("New York public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity.") (collecting cases). Plaintiff cannot, as a matter of law, sue Nassau BOCES for IIED.

In any event, plaintiff's IIED claim should fail as nearly all IIED claims do. Under New York law, the elements of a claim of intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and injury and (4) severe emotional distress. *See Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (citing *Bender v City of New York*, 78 F.3d 787 (2d Cir. 1996)). "With respect to the first element, to satisfy the standard under New York law, defendants' conduct must be 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). "Whether the conduct is 'outrageous' is a matter of law to be decided by the court." *Id.* (citing *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir. 1999)). "The bar is extremely high, and this highly disfavored cause of action is almost never successful." *Id.* (collecting cases). "In fact, the Court of Appeals of New York has noted that, before 1993, every IIED claim before it had failed because the alleged conduct was not sufficiently outrageous." *Id.* (internal quotations omitted) (citing *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115 (1993)).

Assuming for the purposes of this motion that all the allegations in the Amended Complaint are true, the allegations in the Amended Complaint still do not even come close to the type of severe and outrageous conduct required to give rise to an IIED claim.

This claim also cannot exist as plaintiff's allegations "fall within the ambit of traditional tort liability" and are covered by his other claims. *Jackson v. City of New York*, 2014 WL 1010785, at *14 (E.D.N.Y. 2014). Since plaintiff asserts a defamation claim based on the same conduct, this claim is barred as a matter of law. *See Regeda v. City of New York*, 2012 WL 7157703, at *13 (E.D.N.Y. 2012) (IIED and NIED "are theories of recovery that are to be invoked only where other tort remedies are not available"); *see also Biehner v. City of New York*, 2021 WL 878476, at *9 (S.D.N.Y. 2021) (dismissing IIED and NIED claims as duplicative of defamation claim where all claims were based on the same allegations).

A NIED claim is subject to the same analysis as an IIED claim; the only difference is that an IIED claim includes the element of intent to cause emotional distress. *See Young v. Sw. Airlines Co.*, 409 F. Supp. 3d 110, 116 (E.D.N.Y. 2017). Plaintiff must demonstrate the same severe and outrageous required for an IIED claim. *Id.* As argued above, plaintiff simply cannot meet this burden. Further, the NIED claim is also subsumed by the defamation claim. *See Biehner*, 2021 WL 878476, at *9. This claim, therefore, must be dismissed.

## CONCLUSION

Defendants respectfully submit this Court should grant its motion dismiss the amended complaint in its entirety.

Dated: Carle Place, New York
  September 7, 2021

SOKOLOFF STERN LLP

By:    ADAM I. KLEINBERG
       CHELSEA WEISBORD