UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEBRA BECKER,

                                    Plaintiffs,                    Docket No.:  21-cv-02855 (EK) (ST)
              -against-

NASSAU BOCES SCHOOL DISTRICT;
BOARD OF COOPERATIVE EDUCATIONAL SERVICES
OF NASSAU COUNTY (NASSAU BOCES);
DR. ROBERT DILLON, Individually and as
District Superintendent of the Board of Cooperative
Educational Services of Nassau County;
DR. TRACEY NEKULAK, Individually, and as
Executive Director of Human Resources of the
Board of Cooperative Educational Services of Nassau
County; KIM SCHAROFF, Individually, and as Supervisor
1-Speech Language and Hearing Services at the
Board of Cooperative Educational Services of Nassau
County; PATRICIA SCHWETZ, Individually, and as
Assistant Director at the Board of Cooperative
Educational Services of Nassau County;
DR. RANDALL SOLOMON;
ISLAND PSYCHIATRY, PC; and
JOHN DOE AND JANE DOE # 1-100, said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

                                    Defendants.
------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' (*NASSAU BOCES*) MOTION TO DISMISS PLAINTIFF'S
AMENDED VERIFIED COMPLAINT**

THE LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL4471)
Attorneys for Plaintiff
*Debra Becker*
600 Old Country Road, Suite 530
Garden City, New York 11530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ *i*

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................ 4

ARGUMENT .................................................................................................... 5

**POINT I**
**PLAINTIFF HAS SUFFICIENTLY COMPLIED WITH THE**
**NOTICE OF CLAIM REQUIREMENT** ...................................................... 5

    A.  Any Failure to Specifically Name Nassau BOCES in this
        Instance is Not Fatal to Plaintiff's Claims............................................ 5

    B.  Any Failure to Assert Specific Theories of Liability in
        Plaintiff's Notice of Claim Does Not Warrant a Dismissal ................... 7

**POINT II**
**THE STATE LAW CAUSES OF ACTION SET FORTH**
**IN THE COMPLAINT ARE NOT TIME BARRED**
**AND DO SUFFICIENTLY STATE THE CLAIMS**
**ASSERTED BY THE PLAINTIFF** ............................................................ 7

**POINT III**
**PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM**
**SHOULD NOT BE DISMISSED** ............................................................. 10

    A.  Plaintiff's Procedural Due Process Claim is Not Time-Barred ......... 10

    B.  The Circumstances of this Matter Prevented
        Plaintiff from Exhausting Any Administrative Remedies ................... 11

    C.  Plaintiff Adequately States a Procedural
        Due Process and *Stigma Plus* Claim .................................................. 11

    D.  Plaintiff has Sufficiently Stated a *Monell* Claim Against
        Nassau BOCES ................................................................................. 14

    E.  Plaintiff Has Properly Plead Defendants' Dillon,
        Scharoff, and Schwetz's Personal Involvement ................................. 15

F.  The Individual Defendants Are Not Entitled to
Qualified Immunity ...................................................................................17

**POINT IV**
**PLAINTIFF SUFFICIENTLY STATED**
**HER STATE LAW CLAIMS**................................................................................17

A.  Due Process Claim Under the New York State Constitution ............................17

B.  Plaintiff's Defamation Claim is Meritorious .........................................18

C.  Common Law Fraud.........................................................................20

D.  Tortious Interference Claim ..............................................................21

E.  Negligence and Negligent Infliction of
Emotional Distress Claims ..................................................................23

F.  Plaintiff's Intentional Infliction of
Emotional Distress Claim....................................................................24

CONCLUSION...............................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Pataki,*
　　278 F.3d 93, 103 (2d Cir.2002) ...............................................................12, 19

*Adickes v. S.H. Kress & Co.,*
　　398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) .........................16

*Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 ...................................17

*Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) ...........................................18

*Anderson v. Creighton,*
　　483 U.S. 635, 638-641, 97 L. Ed. 2d 523, 107 S. Ct. 3034 ..............................17

*Anthony v. City of New York,*
　　339 F.3d 129, 140 (2d Cir. 2003) ....................................................................14

*Baden v. Koch,*
　　799 F.2d 825, 830–31 (2d Cir.1986) ...............................................................12

*Baez v. Jetblue Airways,*
　　745 F. Supp. 2d 214, at 221, 2010 U.S. Dist. LEXIS 109895 .........................16

*Bailey v. Glover,*
　　88 U.S. 342, 349, 22 L. Ed. 636 (1874) ...........................................................9

*Betts v. Shearman,*
　　751 F.3d 78, 85 (2d Cir. 2014) ........................................................................16

*Birdsall v. City of Hartford,*
　　249 F. Supp. 2d 163, 173 (D. Conn. 2003) .....................................................14

*Bloom v. Fox News of LA,*
　　528 F. Supp. 2d 69, (EDNY 2007) .................................................................24

*Board of Regents v. Roth,*
　　408 U.S. 564, 577, 92 S. Ct. 2701, 2709,
　　33 L. Ed. 2d 548 (1972) ..................................................................................11

*Brown v. City of New York*, 95 NY2d 389, 393,
　　740 N.E.2d 1078, 718 N.Y.S.2d 4 [2000] ........................................................5

**Cases (continued)**

*Brown v. State of New York*,
  89 N.Y.2d 172 (N.Y. 1996) ........................................................11

*Bruker v. City of New York*,
  337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) ................................14

*Caprer v. Nussbaum*,
  36 AD3d 176, 204, 825 NYS2d 55 [2006] ................................22

*Carvel Corp. v. Noonan*,
  3 NY3d 182, 190, 818 NE2d 1100, 785 NYS2d 359 [2004] ..........22

*Chapadeau v. Utica Observer-Dispatch*,
  38 NY2d 196, 199 (1975) ..........................................................24

*Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) ...................12

*Coleman v. Annucci*,
  No. 17-CV-5031 (MKB), 2017 U.S. Dist. LEXIS 212743,
  2017 WL 6622544, n.9 (E.D.N.Y. Dec. 28, 2017) ........................18

*Connolly v. McCall*,
  254 F.3d 36, 40 (2d Cir. 2001) ..................................................10

*County of Schenectady v. Jeffes*,
  531 U.S. 813, 121 S. Ct. 47, 148 L. Ed. 2d 16 (2000) ..................14

*Cruz v. City of New York*,
  95 AD2d 790..............................................................................6

*D'Alessandro v. New York City Tr. Auth.*,
  83 NY2d 891..............................................................................6

*Datlow v. Paleta Intl. Corp.*,
  199 AD2d 362, 363......................................................................21

*Dillard v. City of New York*,
  67 AD2d 878..............................................................................6

*DLT Resources, Inc., v. Credit Lyonnais Rouse, Ltd.*,
  2001 U.S. Dist. LEXIS 87, 2001 WL 25695 (S.D.N.Y. 2001) ..........8

*Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*,
  96 F.3d 623, 632 (2d Cir.1996) ................................................19

**Cases (continued)**

*Evers v. City of New York,*
    90 AD2d 786.................................................................................6

*Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983) .........................................12

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,*
    50 N.Y.2d 183, at 196, 406 N.E.2d 445,
    428 N.Y.S.2d 628, 1980 N.Y. LEXIS 2293 ...........................................21, 22

*Harvey v. Metropolitan Life Ins. Co.,*
    34 AD3d 364, 827 NYS2d 6 [1st Dept. 2006] .........................................7, 8

*Hecht v. Kaplan,*
    221 A.D.2d 100, 105, 645 N.Y.S.2d 51.................................................25

*In re Merrill Lynch Limited Partnerships Litigation,*
    154 F.3d 56, 60 (2d Cir. 1998) ........................................................8

*In re Nine West Shoes Antitrust Litigation,*
    80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000) ............................................9

*Jeffes v. Barnes,*
    208 F.3d 49, 57 (2d Cir. 2000), cert. denied sub nom ......................................14

*John R. Loftus, Inc. v. White,*
    150 AD2d 857, 860.....................................................................22

*Johnson v. Jamaica Hosp.,*
    62 N.Y.2d 523, 478 N.Y.S.2d 838, 467 N.E.2d 502 ..................................25

*Johnson v. Ry. Express Agency, Inc.,*
    421 U.S. 454, 465, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975) ..........................10

*Johnson v. State of New York,*
    37 N.Y.2d 378, 383, 372 N.Y.S.2d 638, 334 N.E.2d 590 .............................25

*Kaiser v. Cahn,*
    510 F.2d 282, 286-87 (2d Cir. 1974) ..................................................10

*Krog Corp. v. Vanner Group, Inc.,*
    158 AD3d 914, 919, 72 N.Y.S.3d 178 [2018] ........................................8

*Lauer v. City of New York,*
    659 N.Y.S.2d 57.....................................................................24, 25

**Cases (continued)**

*Leonhard v. United States*,
   633 F2d 599, 613 [2d Cir. 1980], cert denied
   451 US 908, 101 S Ct 1975, 68 L Ed 2d 295 [1981] ....................................8

*Levine v. City of New York*,
   111 A.D.2d 785, 787, 490 N.Y.S.2d 533,
   535-36 (2d Dep't 1985) ...........................................................................7

*Maiello v. City of New York*,
   103 Misc. 2d 1064.....................................................................................6

*Martinez v. City of Schenectady*,
   97 N.Y.2d 78, 761 N.E.2d 560, 563,
   735 N.Y.S.2d 868 (N.Y. 2001) ..............................................................17

*Matter of Powell v. Town of Gates*,
   36 AD2d 220............................................................................................6

*Mayer v. DuPont Associates, Inc.*,
   80 A.D.2d 799, 799-800, 437 N.Y.S.2d 94,
   94-95 (1st Dep't 1981) ............................................................................6

*Meyer v. Frank*,
   550 F.2d 726, 729 (2d Cir. 1977) ..........................................................10

*Milan v. Wertheimer*,
   808 F.3d 961, 963 (2d Cir. 2015) ..........................................................10

*Miles v. City of New York*,
   173 AD2d 298...........................................................................................6

*Monell v. New York City Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658, 691, 98 S. Ct. 2018, 2036,
   56 L. Ed. 2d 611 (1978) ....................................................................14, 18

*Murphy v. Am. Home Products Corp.*,
   58 NY2d 293, 303 [1983] ......................................................................23

*NBT Bancorp. v. Fleet/Norstar Fin. Group*,
   87 NY2d 614, 621, 664 NE2d 492, 641 NYS2d 581 [1996] .................22

*O'Neill v. City of Auburn*,
   23 F.3d 685, 691 (2d Cir.1994) ..............................................................12

**Cases (continued)**

*Othman v. City of New York*,
  No. 13-CV-4771 (NGG), 2018 U.S. Dist. LEXIS 59967,
  2018 WL 1701930, (E.D.N.Y. Mar. 31, 2018) ................................18

*Pelaez v. Seide*,
  778 NYS2d 111, 117 (2004) ..............................................25

*Palmer v. Society for Seamen's Children*,
  88 AD3d 970, 971, 931 N.Y.S.2d 389 [2nd Dept. 2011] ....................5

*Penn Warranty Corp. v. DiGiovanni*,
  2005 NY Slip Op 25449 10 Misc3d 998 (2005) ...........................19

*Purdy v. City of New York*,
  193 NY 521 ...............................................................6

*Romero v. City of New York*,
  839 F. Supp. 2d 588, 2012 U.S. Dist. LEXIS 36049, 2012 WL 899945.........24

*Rosenblatt v. Baer*,
  383 U.S. 75 (1966) ......................................................18

*Ring v. AXA Fin., Inc.*,
  2008 NY Slip Op 30637[U] [Sup Ct, NY County 2008] .......................8

*Rivera v. Wyckoff Hgts. Hosp.*,
  184 A.D.2d 558, 560, 584 N.Y.S.2d 648...................................25

*Rivero v. City of New York*,
  290 NY 204...............................................................6

*Rotella v. Wood*,
  528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047,
  2000 U.S. LEXIS 1537, 68 U.S.L.W. 4153,
  2000 Cal. Daily Op. Service 1357, 2000 Daily Journal DAR 1905,
  2000 Colo. J. C.A.R. 952, 13 Fla. L. Weekly Fed. S 127...............8, 9

*Santana v. Leith*,
  117 AD3d 711, 712 [2d Dept. 2014] ...................................22, 23

*Segal v. City of New York*,
  459 F.3d 207 (2d Cir. 2006) ...........................................11

*Sciolino v. Newport News*,
  US-2229 (4th Cir. Mar. 12, 2007) ......................................19

**Cases (continued)**

*Sheila C. v. Povich,*
   11 AD3d 120, 131 [1st Dept. 2004] ................................................................23

*State of New York v. Hendrickson Brothers, Inc.,*
   840 F.2d 1065 (2d Cir. 1988) cert. denied,
   488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988) ..................................9

*Sullivan v. Metro. Transit Auth. Police Dep't,*
   No. 13-CV-7677 (NRB), 2017 U.S. Dist. LEXIS 155254,
   2017 WL 4326058, (S.D.N.Y. Sept. 13, 2017) ...............................................18

*Tancredi v. Metro. Life Ins. Co.,*
   316 F.3d 308, 312 (2d Cir. 2003) ....................................................................16

*Teresta v. City of New York,*
   304 NY 440, 443, 108 N.E.2d 397 [1952] ........................................................5

*Ullmannglass v. Oneida, Ltd.,*
   86 AD3d at 828 ...............................................................................................8

*Valdez v. City of New York,*
   936 NYS2d at 592.........................................................................................25

*Valmonte v. Bane,*
   18 F.3d 992, 999 (2d Cir.1994) ......................................................................12

*Wallace v. Kato,*
   549 U.S. 384, at 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973,
   2007 U.S. LEXIS 2650, 75 U.S.L.W. 4107,
   20 Fla. L. Weekly Fed. S 88 ..........................................................................10

*Washington v. James,*
   782 F.2d 1134, 1138 (2d Cir. 1986) ...............................................................16

*Wenger v. Canastota Cent. Sch. Dist.,*
   No. 5:95-CV-1081, 2004 U.S. Dist. LEXIS 5636,
   2004 WL 726007, (N.D.N.Y. Apr. 5, 2004) ...................................................14

*WFB Telecommunications v. NYNEX Corp.,*
   188 AD2d 257.................................................................................................21

*White v. Averill Park Cent. Sch. Dist.,*
   195 Misc. 2d 409, 759 N.Y.S.2d 641
   (Sup. Ct. Rensselaer Cty. 2003).......................................................................5

**Cases (continued)**

*Widger v. Central School Dist. No. 1,*
    18 NY2d 646 ........................................................................................................6

*Williams v. Smith*, 781 F.2d 319 .............................................................................17

**Rules**

Article 78 ..................................................................................................................11

New York State Education Law Section 913 ....................................................... 4, 13

Education Law § 3813 (2-b) ..................................................................................... 7

Education Law Section 3020-a.............................................................................. 4, 17

General Municipal Law §50-e ............................................................................... 5, 6

General Municipal Law § 50-e [2] ........................................................................... 5

General Municipal Law § 50-e [5] ........................................................................... 7

General Municipal Law Section 50-h....................................................................... 6

42 USC § 1983 .................................................................................... 10, 13, 16, 17, 18

**Secondary Sources**

72 NY Jur 2d, <u>Interference</u>, § 44, at 240 ............................................................. 22

Restatement [Second] of Torts §§ 768, Comment e and 767, Comment c .................... 22

Restatement (Second) of Torts §§ 899, 910 (1977) ...................................................... 8

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in opposition to Defendants' (Nassau BOCES) Motion to Dismiss Plaintiff's Amended Verified Complaint.

Defendants' motion is a thinly-veiled attempts to reframe Plaintiff's case into something that it is not and redirect this Court's attention from the egregious and unscrupulous actions and behaviors of these Defendants. In a confusing presentation of misguided and misstated facts, Defendants' papers ignore the four corners of the Amended Verified Complaint and disregard the fact that the detailed factual allegations in the Amended Verified Complaint are to be accepted as true.

The Defendants' arguments are without merit. Plaintiff's reputation as a dedicated, respected, and tenured Speech and Hearing teacher of students with disabilities with Nassau BOCES, at the Carmen Road School, demonstrating exemplary dedication and performance, has been irrevocably damaged and she has been falsely accused and characterized, and subjected to unlawful intrusions and continued harassment and ridicule. Additionally, her professional career has been substantially compromised, and she has been unwillingly exposed to negative stigma, which has publicly humiliated and embarrassed her, and continues through to this day.

While working for Nassau BOCES there began a continuing pattern of erroneously targeting Plaintiff for unwarranted disciplinary action, purportedly related only to her time and attendance due to significant illnesses and injuries. Nonetheless, Plaintiff, under false pretenses, was ordered to attend a New York Education Law § 913 evaluation with Dr. Randall Solomon. The Defendant, Nassau BOCES erroneously relied upon Dr. Solomon's report, speciously determining Plaintiff to be unfit to return to her position. Nonetheless, despite being absolved of all charges and restored to her position with the Nassau BOCES, Plaintiff's harm, as a result of the

Defendants' actions, is continuing and based upon unsubstantiated findings concerning Plaintiff's capabilities and mental competence to teach, which were known to be false.

The events, as outlined in Plaintiff's Amended Verified Complaint appropriately demonstrate a violation of Plaintiff's civil rights and due process and evidence claims of discrimination, defamation, negligence, negligent and intentional infliction of emotional distress, fraud, and tortious interference with employment. The Nassau BOCES Defendants argue the timeliness of Plaintiff's claims; however, this argument is flawed and disingenuous. Plaintiff's claims for damages with respect to the tort claims actually accrue when, (though ultimately acquitted of the charges erroneously enacted against her), she will retire with a blemished record, unable to pursue or secure a position in education administration, which she was otherwise more than qualified to attain, and causing the Plaintiff severe and irreparable financial damage and emotional and physical distress. Notably, Plaintiff's harm as a result of Nassau BOCES Defendants' actions is continuing, as a result of having to disclose the fact that she was previously charged and subjected to disciplinary action and placed on involuntary administrative leave, all resulting from the Section 913 psychological examinations by Dr. Solomon, wherein he made unsubstantiated findings concerning her capabilities and mental competence to perform her duties, which were false. Thus, having to disclose the fact that she was previously charged with disciplinary action and placed on involuntary administrative leave, subjects Plaintiff to continuing harm. Moreover, despite being absolved of the underlying charges, Plaintiff continues to be treated disparately by the Nassau BOCES Defendants, to wit: (1) after suffering recent successive deaths of her loved ones, including her husband and father, and being entitled to ten (10) bereavement days, Plaintiff was inexplicably refused; (b) she submitted her professional goal as requested, which was almost identical to everyone else's, yet she was inexplicably made to recreate it three

(3) times, until it was finally approved; and (3) out of 130 speech therapists, Defendant, Kim Scharoff, audited Plaintiff's first and made her rewrite her thirteen (13) goals, merely because she digitally signed them a mere one or two minutes before the session was over. Plaintiff was compelled to attend a mandated disciplinary meeting, related to her taking bereavement days, despite the fact that she was entitled to take 10 days for her father and husband, but actually only took 5 days. She continues to be subjected to unwarranted and retaliatory disciplinary action.

Additionally, Plaintiff has fully complied with Education Law § 3813's notice of claim requirement, and has alleged facts plausibly suggesting the existence of a formal policy, a specific action taken or decision made by a municipal policymaking official, or a practice so widespread that it practically has the force of law. Dr. Solomon is engaged by many, if not all, of the Nassau County and Suffolk County School Districts, wherein he allegedly employs similar subversive tactics, such that identical diagnosis of incapability and mental incompetence are rendered against teachers and education professionals without any corroboration or basis. In this regard, Defendants' have failed to substantiate any basis warranting a dismissal of the §1983 claims against all individual Defendants on qualified immunity grounds. Certainly, the facts and circumstances of this matter would easily meet that threshold.

Plaintiff's Amended Verified Complaint is wrought with specific accounts of the false material representations presented by Defendants as truth, as well as Defendants' misconduct in manipulating and falsifying information to accomplish their own agenda. Based on the foregoing, it has been sufficiently demonstrated that Defendants have failed to meet the Court's standard on CPLR § 3211 motions. Accordingly, the Defendants' motions to dismiss should be denied in all respects.

## STATEMENT OF FACTS

The history of this case is somewhat protracted. Plaintiff seeks recovery for damages for the harm caused to her reputation and career, and additionally, for the defamation, distress, suffering, mental, emotional, and physical anguish, harassment, and humiliation, impairment of her ability to secure future employment, impairment of her earning power, and embarrassment inflicted upon her due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants; inappropriately placing her on an involuntary administrative leave and reassignment and inappropriately making her the subject of unnecessary psychiatric examinations conducted by Dr. Randall Solomon, where she was, *inter alia*, erroneously deemed unfit to teach in a report submitted by Dr. Solomon under the color of law, namely Section 913, and subjected to an Education Law Section 3020-a disciplinary proceeding. In sum, even though Plaintiff was found not guilty of all charges in a 3020-a hearing, the stain of the fraud and deceit of Defendants remains in her personnel file and makes her the target of repeated retribution.

The events, as outlined in further detail in Plaintiff's Amended Verified Compliant, (Defendant Nassau BOCES Exhibit A**)**, and perpetrated by Defendants herein, appropriately demonstrate claims alleging a violation of Plaintiff's civil rights and due process, and of defamation, negligence, negligent and intentional infliction of emotional distress, fraud, and tortious interference with employment on the part of Defendants.

<u>**ARGUMENTS**</u>

**POINT I**

**PLAINTIFF HAS SUFFICIENTLY COMPLIED WITH THE
NOTICE OF CLAIM REQUIREMENT**

**A. Any Failure to Specifically Name Nassau BOCES in this Instance is Not Fatal to Plaintiff's Claims**

The Defendants have argued that the notice of claim fails to specifically name Nassau BOCES. While the Courts have held that "General Municipal Law §50-e does not authorize actions against individuals, who have not been individually named in a notice of claim," (<u>see</u>, *White v. Averill Park Cent. Sch. Dist.*, 195 Misc. 2d 409, 759 N.Y.S.2d 641 (Sup. Ct. Rensselaer Cty. 2003), nothing has been specifically stated with respect to naming and serving individual, employees of the municipality, at the municipality. The fundamental purpose of the statutory notice of claim requirement, (General Municipal Law § 50-e), is to afford the public corporation "an adequate opportunity to investigate the circumstances" surrounding the incident and "to explore the merits of the claim while information is still readily available." <u>See</u>, *Palmer v. Society for Seamen's Children*, 88 AD3d 970, 971, 931 N.Y.S.2d 389 [2nd Dept. 2011], <u>citing</u>, *Teresta v. City of New York*, 304 NY 440, 443, 108 N.E.2d 397 [1952]. To that end, the statute requires that the notice set forth "the time when, the place where and the manner in which the claim arose." (General Municipal Law § 50-e [2]; <u>see</u>, *Brown v. City of New York*, 95 NY2d 389, 393, 740 N.E.2d 1078, 718 N.Y.S.2d 4 [2000]. The requirements of the statute are met when the notice describes the accident with sufficient particularity, so as to enable the Defendants to conduct a proper investigation thereof and to assess the merits of the claim. <u>See</u>, *Palmer*, <u>supra</u>. In this regard, the Defendant, Nassau BOCES has failed to demonstrate that they lacked adequate notice of Plaintiff's claim, or that there has been any delay in investigation. The notice of claim herein fully complied

with General Municipal Law § 50-e and provided Defendant Nassau BOCES with ample information upon which to base an investigation of the allegations. See, *Matter of Powell v. Town of Gates*, 36 AD2d 220; *Widger v. Central School Dist. No. 1*, 18 NY2d 646; *Rivero v. City of New York*, 290 NY 204; *Purdy v. City of New York*, 193 NY 521; *Maiello v. City of New York*, 103 Misc. 2d 1064; *D'Alessandro v. New York City Tr. Auth.*, 83 NY2d 891; *Miles v. City of New York*, 173 AD2d 298; *Cruz v. City of New York*, 95 AD2d 790; *Evers v. City of New York*, 90 AD2d 786; *Dillard v. City of New York*, 67 AD2d 878.

Notably, Plaintiff has complied with the requirements of New York General Municipal Law Section 50-I by serving notices of claim upon the BOCES Defendants within the time required by New York General Municipal Law Section 50-e, and at the Defendants' request, on November 12, 2018 and November 19, 2018, the Plaintiff submitted to hearings pursuant to New York General Municipal Law Section 50-h involving the events as referred to in the Amended Verified Complaint. Standing alone, the notice of claim adequately alerted the Nassau BOCES Defendants to Plaintiff's claims. However, even assuming *arguendo*, the existence of such an insufficiency, in certain circumstances, even such a deficiency in the Notice of Claim can be cured when the appropriate facts are brought out at the 50-h hearing. See, *Mayer v. DuPont Associates, Inc.*, 80 A.D.2d 799, 799-800, 437 N.Y.S.2d 94, 94-95 (1st Dep't 1981). This is such a case. The extensive transcript of the hearing, which took place over two days, reveals that reference was made to these claims and of extensive facts on which such theories could be based. See, *Levine v. City of New York*, 111 A.D.2d 785, 787, 490 N.Y.S.2d 533, 535-36 (2d Dep't 1985). Thus, the Defendants possessed the requisite knowledge of the Plaintiff's claims, and this argument must fail.

**B. Any Failure to Assert Specific Theories of Liability in Plaintiff's Notice of Claim Does Not Warrant a Dismissal**

The Defendant argues that Plaintiff's negligence, NIED, and fraud claims must be dismissed based on Plaintiff's failure to assert these theories of liability in her notice of claim. This is not an instance where additional causes of action, were not referred to, either directly or indirectly in the original notice of claim and would substantially alter the nature of Plaintiff's claims. Only such new theories of liability, not previously interposed, would be time barred. See, General Municipal Law § 50-e [5]. Markedly, the claims are indirectly present in the Plaintiff's notice of claim, which was notably prepared by the Plaintiff, *pro-se*.

As previously stated, even assuming *arguendo* that specific theories of liability were not appropriately asserted in the notice of claim, in certain circumstances, such a deficiency can be cured when the appropriate facts are brought out at the hearing that takes place before the municipality's representative. See, *Mayer*, supra. This would be such a case. The transcript of the hearing reveals certain facts on which such theories could be based. See, *Levine v. City of New York*, 111 A.D.2d 785, 787, 490 N.Y.S.2d 533, 535-36 (2d Dep't 1985). Therefore, this argument must also fail.

**POINT II**

**THE STATE LAW CAUSES OF ACTION SET FORTH IN THE COMPLAINT ARE NOT TIME BARRED AND DO SUFFICIENTLY STATE THE CLAIMS ASSERTED BY THE PLAINTIFF**

While Education Law § 3813 (2-b) provides that no action may be maintained against a school district more than one year after the cause of action arose, Plaintiff's State Law causes of action are not time barred. In this instance, there is a series of continuing wrongs, and the *continuing wrong doctrine* tolls the limitation period until the date of the commission of the last wrongful act. See, *Harvey v. Metropolitan Life Ins. Co.*, 34 AD3d 364, 827 NYS2d 6 [1st Dept.

2006]; see also, *Ring v. AXA Fin., Inc.*, 2008 NY Slip Op 30637[U] [Sup Ct, NY County 2008].

Under general principles of law, a cause of action accrues when conduct that invades the rights of another has caused injury. When the injury occurs, the injured party has the right to bring suit for all of the damages, past, present and future, caused by the defendant's acts. See, Restatement (Second) of Torts §§ 899, 910 (1977). Here, Plaintiff has presented evidence of a "continuing wrong," which is "deemed to have accrued on the date of the last wrongful act." See, *Leonhard v. United States*, 633 F2d 599, 613 [2d Cir. 1980], cert denied 451 US 908, 101 S Ct 1975, 68 L Ed 2d 295 [1981]; *Harvey*, supra, 34 AD3d at 364. Moreover, "in determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." See, *Ullmannglass v. Oneida, Ltd.*, 86 AD3d at 828 [internal quotation marks and citations omitted]; see, *Krog Corp. v. Vanner Group, Inc.*, 158 AD3d 914, 919, 72 N.Y.S.3d 178 [2018]. Nonetheless, even assuming *arguendo* that this Court would otherwise consider these claims time barred, in cases, such as this, where causes of action have been fraudulently concealed, the statute of limitations is tolled until the action is, or could have been, discovered through the exercise of due diligence. A plaintiff may avail itself of the doctrine of equitable tolling if they can show that the elements of fraudulent concealment have been met. See, *In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 60 (2d Cir. 1998); *DLT Resources, Inc., v. Credit Lyonnais Rouse, Ltd.*, 2001 U.S. Dist. LEXIS 87, 2001 WL 25695 (S.D.N.Y. 2001). The Court in *Rotella v. Wood*, (528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047, 2000 U.S. LEXIS 1537, 68 U.S.L.W. 4153, 2000 Cal. Daily Op. Service 1357, 2000 Daily Journal DAR 1905, 2000 Colo. J. C.A.R. 952, 13 Fla. L. Weekly Fed. S 127), noted that…. "As a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, and where a pattern remains obscure in the face of a

plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty…." Id. (citations omitted) (emphasis added). If a plaintiff can satisfy the elements of fraudulent concealment, then the statute of limitations may be tolled. A plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he/she establishes (1) that the defendant concealed from him/her the existence of his cause of action, (2) that he/she remained in ignorance of that cause of action until some point within three years of the commencement of his/her action, and (3) that his/her continuing ignorance was not attributable to a lack of diligence on his/her part. See, *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065 (2d Cir. 1988) cert. denied, 488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988). The purpose of this doctrine "is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'' See, *Hendrickson Bros.*, 840 F.2d at 1083 (quoting, *Bailey v. Glover*, 88 U.S. 342, 349, 22 L. Ed. 636 (1874)). A plaintiff may prove the concealment element in one of two ways: (a) the defendant took affirmative steps to prevent the plaintiff from discovering the claim or injury, or (b) the wrong itself was of such a nature as to be self-concealing. See, *New York v. Hendrickson Bros., Inc.*, supra; see also, *In re Nine West Shoes Antitrust Litigation*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000) ("Circuit has adopted the more lenient standard requiring plaintiffs to prove concealment by showing either that the defendants took affirmative steps to prevent plaintiffs' discovery of the conspiracy, or that the conspiracy itself was inherently self-concealing."). Consequently, Plaintiff's claims should not be time barred.

**POINT III**

**PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM SHOULD NOT BE DISMISSED**

**A. Plaintiff's Procedural Due Process Claim is Not Time-Barred**

The statute of limitations for a section 1983 claim is three years. See, e.g., *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001). However, it is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances. See, *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975); *Kaiser v. Cahn*, 510 F.2d 282, 286-87 (2d Cir. 1974). In practice, resolution of the tolling question involves striking a balance between protection of the substantive federal policy under consideration on the one hand, and protection of the policy behind the statute of limitations on the other hand. The plaintiff's conduct, particularly his diligence in pressing his claim also is taken into account. See, *Meyer v. Frank*, 550 F.2d 726, 729 (2d Cir. 1977) (citations omitted). The question of when a cause of action under Section 1983 accrues is a question of federal law. See, *Wallace v. Kato*, 549 U.S. 384, at 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973, 2007 U.S. LEXIS 2650, 75 U.S.L.W. 4107, 20 Fla. L. Weekly Fed. S 88. Under the federal standard, a Section 1983 claim accrues when a "plaintiff knows or has reason to know of the injury giving rise to the claim." See, *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citation omitted). Plaintiff's due process rights are bring continually violated by the actions of the Defendants.

Further, while it is argued that Courts in the Second Circuit have viewed continuing violation arguments with disfavor, a continuing violation may be found where specific and related instances of discrimination are permitted by the employer to continue un-remedied for so long as to amount to a discriminatory policy or practice. Where a continuing violation can be shown, the

Plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period.

**B. The Circumstances of this Matter Prevented Plaintiff from Exhausting Any Administrative Remedies**

With respect to Plaintiff's procedural due process claims, in *Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006), the Court held that "in the context of an at-will government employee, a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process, only as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests. Plaintiff argues that even if a grievance proceeding or an Article 78 proceeding were available to her, (which she contends they were not), her reputational and professional interests had already been destroyed and not afforded any protection by the Defendants. Accordingly, the Court should not dismiss Plaintiff's claim that she was deprived of liberty interest without due process.

**C. Plaintiff Adequately States a Procedural Due Process and *Stigma Plus* Claim**

To have a property interest in a benefit, an individual must show he is entitled to the benefit. See, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). The remedies recognized in *Brown v. State of New York*, 89 N.Y.2d 172 (N.Y. 1996), were the private interests that citizens harmed by constitutional violations have an avenue of redress and the public interest that future violations be deterred. Additionally, plaintiffs must establish grounds that entitled them to damages, in addition to proving their Constitutional rights have been violated. Notably, the money damages must be appropriate to ensure full realization of his asserted constitutional rights. Similar to case at hand, Plaintiff has suffered a multitude of damages, including but not limited to, being falsely labeled as having an issue with time and attendance to later being erroneously determined by Dr. Solomon to be unfit to return to her position; when in

fact, she was fully vindicated of the charges brought against her. Notably, the basis of her charges was the finding itself, and not any of the alleged issues for which she was originally being disciplined.

Plaintiff has also established a deprivation of liberty interest. The Due Process Clause protects an individual from a government employer who disseminates false and defamatory information about the individual. <u>See</u>, *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983). While the liberty interest at stake is the employee's reputation, the employee's liberty interest is implicated when the employer imposes such a stigma as to restrict the employee's ability to obtain future employment, in which case, due process requires the government to provide the employee a name-clearing hearing. <u>See</u>, *Baden v. Koch*, 799 F.2d 825, 830–31 (2d Cir.1986). This is commonly referred to as the "<u>stigma plus</u>" test. <u>See</u>, *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994). To satisfy the "<u>stigma-plus</u>" test, Plaintiff must prove (1) that she was defamed; (2) that the defamation took place in the course of her being charged; and (3) and that stigma foreclosed her from any future employment. <u>See</u>, *Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir.2002); *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir.1994); *Baden*, <u>supra</u>, at 830–31. After showing each of the three elements of the "<u>stigma-plus</u>" test, Plaintiff must also show that the Nassau BOCES Defendants failed to provide her a name clearing hearing consistent with her due process rights. Notably, a 3020-a hearing is NOT a name clearing hearing. That is, she must show harm caused by denial of a hearing. <u>See</u>, *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Public employees who are not afforded the due process of the law are deprived of liberty interests. The reason being because damaging information tarnishes their reputations which in turn, makes it that much more difficult to secure employment.

The Nassau BOCES Defendants had actual knowledge that they intentionally created a narrative by developing and furthering false charges and abusing the New York State Education Law Section 913 Law by retaining and relying upon the bias and unsubstantiated report of the Defendant, Dr. Randall Solomon to make the Plaintiff appear unfit to perform her duties. The Nassau BOCES Defendants took terrible advantage of the situation and forced Plaintiff into an unsubstantiated 3020-a hearing, threatening her employment, justified only by abusing the system in an attempt to satisfy their own agenda.

Education Law Section 913 specifies that the examination of an employee must be performed either by the district's director of school health services or by another physician or healthcare provider of the employee's choice. Moreover, the employee has the right to be accompanied to the exam by a physician or other qualified person of his or her choice. Notably, Plaintiff was never told by the Nassau BOCES Defendants that she could be assessed by a doctor of her own choice. In fact, she was forced to see Dr. Solomon, only to be lied about and her character maligned. Plaintiff learned that Dr. Solomon never had to bid for any job with the District/School that involved a Section 913 assessment. Without a contractor bidding on any job, Dr. Solomon was under the direction of the school to give assessments finding the educator "unfit to work." As such, Plaintiff has established that she has suffered a deprivation of a constitutionally protected interests, in accordance with 42 USC § 1983.

Plaintiff has demonstrated a deprivation of liberty/"stigma-plus" claim that Defendants made false a stigmatizing statements about her, wherein there was a state imposed burden, and Plaintiff has experienced an adverse act, to wit: she has been publically "marked" and falsely sustained as having committed an acts which will forever humiliate her and prevent her from obtaining an administrative position in education. Further, there is no post-deprivation remedy that

would exonerate her, as that false an inappropriate, public characterization remains a permanent part of her record. Plaintiff has no other adequate remedy at law or in equity.

### D. Plaintiff has Sufficiently Stated a *Monell* Claim Against Nassau BOCES

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of respondeat superior." <u>See</u>, *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (<u>citing</u>, *Monell v. New York City Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)). Despite the fact that respondeat superior liability does not lie, a municipal entity or employee sued in his or her official capacity can be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." <u>See</u>, *Monell*, <u>supra</u>, 436 U.S. at 690-91. Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." <u>See</u>, *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (<u>quoting</u>, *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. <u>See</u>, *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), cert. denied sub nom., *County of Schenectady v. Jeffes*, 531 U.S. 813, 121 S. Ct. 47, 148 L. Ed. 2d 16 (2000); <u>see</u> <u>also</u>, *Wenger v. Canastota Cent. Sch. Dist.*, No. 5:95-CV-1081, 2004 U.S. Dist. LEXIS 5636, 2004 WL 726007, (N.D.N.Y. Apr. 5, 2004). Defendants'

goal was to find Plaintiff unfit to work, so that she could be terminated. Defendants wanted Plaintiff to be evaluated by Dr. Solomon, and did not tell her she could be assessed by her own doctor, because they wanted to rely solely on Dr. Solomon's opinion.

On May 3, 2018, the Plaintiff's colleague, was found not guilty of all charges after in that matter, the Arbitrator recognized the fraud and deceit of Dr. Solomon. In this regard, Arbitrator James Brown wrote:

> "BOCES 'improperly' retained the services of Dr. Solomon who never 'bid for his work.' (Respondent Brief at 13). Alleging a violation of a local ordinance, Respondent submits that 'public money' was improperly 'spent without any budgetary line, no bidding and no accountability,' which resulted in two evaluations with 'no oversight, guidance or accountability.' (Respondent Brief at 15-17)."

Thus, municipal liability is established in a case such as this, through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy," which is in violation of local ordinance, which results in evaluations with "no oversight, guidance, or accountability." For this reason, Defendants' argument must fail, and Plaintiff's § 1983 claims should be upheld and the Defendants' motion should be denied.

### E. Plaintiff Has Properly Plead Defendants' Dillon, Scharoff, and Schwetz's Personal Involvement

The actions of Defendants were wanton and reckless, with malice and without reason or basis, and were arbitrary, capricious, and unfounded. To wit, the oral and written statements made by Dr. Dillon and Tracy Nekulak are defamatory as they directly impact the Plaintiff's character and reputation within Nassau BOCES, as well as outside the school District. The Defendants Scharoff and Schwetz belittled the Plaintiff and subjected her to ridicule by their hostile and inappropriate conduct, to wit: denying Plaintiff bathroom visits, a proper chair to sit on during the school day, and making other such derogatory comments, <u>which were used to support the</u>

proffering of erroneous 3020-a charges being brought against Plaintiff, as well as cause Plaintiff emotional distress. (¶s 78-81 and 104 Amended Verified Complaint). Moreover, the harassment is continuing, as the Plaintiff is still subjected to the improper conduct of the Defendant Scharoff.

"In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person acting under color of state law deprived [her] of a federal right." See, *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986); see, *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). "A private party also acts under color of state law if it conspires with state actors to deprive someone of his or her constitutional rights." See, *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214, at 221, 2010 U.S. Dist. LEXIS 109895 (citing, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In such a case, "there must be 'such a close nexus between the State and the challenged private action that seemingly private behavior may be fairly treated as that of the State itself.'" Id. (quoting, *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

Defendant Dillon's goal was to find Plaintiff unfit to work, so that Plaintiff, a tenured teacher, could be terminated. He wanted Plaintiff to be evaluated by Dr. Solomon, and did not tell Plaintiff she could otherwise be assessed by her own doctor, because he wanted to rely solely on Dr. Solomon's opinion. Plaintiff was subjected to an erroneous, unsubstantiated, and unnecessary psychiatric evaluation, served with fabricated and unfounded charges, arising from that illegitimate evaluation, placed on an involuntary reassignment that exceeded the maximum allowable amount of time and subjected her to the placement of fabricated and unfounded charges and remarks in her permanent record with the State of New York Department of Education that can be publically viewed. The acts of these Defendants, their employees and agents, were intentional in failing to protect and preserve Plaintiff's civil rights and that, at minimum, Defendants were deliberately indifferent to the likelihood that the Plaintiff's rights would be denied without due process based

on their purposeful and fraudulent acts, and on the past occurrences of these same constitutional and statutory violations of the law. Further, contrary to the Defendants' argument and despite a finding in her favor following the 3020-a hearing, there is no post-deprivation remedy that would exonerate Plaintiff from the false findings of Dr. Solomon, as that false and inappropriate characterization is a permanent part of her teaching record.

### F. The Individual Defendants Are Not Entitled to Qualified Immunity

A party is entitled to qualified immunity only if his or her conduct is not violative of clearly established rights which a reasonable person knew, or objectively and reasonably believed, did not violate such rights. See, *Anderson v. Creighton*, 483 U.S. 635, 638-641, 97 L. Ed. 2d 523, 107 S. Ct. 3034. Superintendent Dillon's request that the Plaintiff report for a psychiatric examination was not based upon any behaviors or actions that would otherwise warrant a disciplinary proceeding. Plaintiff has established that all named Defendants were involved in the Plaintiff's re-assignment, fabricated charges, and involuntary leave and re-assignment. Thus, Plaintiff's 42 USC § 1983 claim against these Defendants would not properly be dismissed. See, *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065; *Williams v. Smith*, 781 F.2d 319.

POINT IV

PLAINTIFF SUFFICIENTLY STATED HER STATE LAW CLAIMS

### A. Due Process Claim Under the New York State Constitution

The Court of Appeals has held that a private right of action for violations of the New York State Constitution exists only where such a right of action is necessary to address both "the private interest that citizens harmed by constitutional violations have an avenue of redress, and the public interest that future violations be deterred." See, *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 761 N.E.2d 560, 563, 735 N.Y.S.2d 868 (N.Y. 2001). However, while, Federal courts in this

Circuit have uniformly held that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under §1983 for violations of parallel provisions of the U.S. Constitution, (see, e.g., *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (summary order); *Othman v. City of New York*, No. 13-CV-4771 (NGG), 2018 U.S. Dist. LEXIS 59967, 2018 WL 1701930, (E.D.N.Y. Mar. 31, 2018); *Coleman v. Annucci*, No. 17-CV-5031 (MKB), 2017 U.S. Dist. LEXIS 212743, 2017 WL 6622544, n.9 (E.D.N.Y. Dec. 28, 2017); *Sullivan v. Metro. Transit Auth. Police Dep't*, No. 13-CV-7677 (NRB), 2017 U.S. Dist. LEXIS 155254, 2017 WL 4326058, (S.D.N.Y. Sept. 13, 2017)), these decisions rely on the premise that §1983 provides an "adequate" alternative remedy for violations of the New York State Constitution, and that premise may not be entirely sound. Thus, the Court needs to consider whether Plaintiff can maintain her state-constitutional claims against the municipality. Plaintiff contends that §1983 may not supply an adequate alternative remedy for her state-constitutional claims against Nassau BOCES, because she seeks to hold the Nassau BOCES liable under a theory of *respondeat superior*, which is cognizable as a matter of state constitutional-tort law, but not under §1983. Because § 1983 does not authorize respondeat-superior liability, (see, *Monell*, supra, 436 U.S. at 691-95), it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims, to the extent they are asserted against Nassau BOCES.

### B. Plaintiff's Defamation Claim is Meritorious

The hallmark of a defamation claim is reputational harm. Former United States Supreme Court Justice, Potter Stewart wrote in *Rosenblatt v. Baer*, 383 U.S. 75 (1966), that the essence of a defamation claim is the right to protect one's good name. According to Justice Stewart, this tort "reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty." Id. It bears mentioning that Under

New York law, some written statements are considered defamation (libel) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity." See, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, the facts as presented have irreparably injured Plaintiff in her profession, and subjecting her to continued harassment by the administration.

Defamation is established if the statements made were false and publicly stigmatized Plaintiff. See, *Abramson*, supra, 278 F.3d at 101–02. "[S]tigmatizing allegations ... include charges going to professional competence when the charges are sufficiently serious." See, *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 632 (2d Cir.1996). The sustained charges against Plaintiff have placed a negative stigma on her reputation. Further, in *Sciolino v. Newport News*, US-2229 (4th Cir. Mar. 12, 2007), the court concluded that an employee sufficiently meets the second element when they allege that prospective employers are likely to see the stigmatizing allegations. Plaintiff has sufficiently alleged that the erroneous characterizations and psychological assessments on her permanent record with the school District would be seen by anyone reviewing her record and will prevent her from obtaining administrative positions in education, despite being exonerated of the charges filed against her in the 3020-a hearing.

Defendants have disingenuously and improperly sustained facts of this case by manipulating the facts in order to suit their own agenda. Nonetheless, these events are only included in Plaintiff's permanent record through a series of fraudulent and improper acts perpetrated by Defendants. As such, Plaintiff's personnel file and also the permanent record with the District, contain false information against Plaintiff, provided in conjunction with Dr. Solomon,

which has and will continue to cause her injury in her trade, business, and profession. The accusations made against Plaintiff, as documented, published, spoken, generated and disseminated by these Defendants and others to the third party as identified above are remarkably false. As such, Defendants' argument concerning defamation and defamation *per se* must also fail.

## C. Common Law Fraud

Plaintiff's Amended Verified Complaint is wrought with specific accounts of the false material representations presented by Nassau BOCES Defendants as truth, as well as Defendants' misconduct in manipulating information to accomplish their own agenda. Further, Defendants' collective actions constitute acts of deception and manipulation, by concealment, and commission, in generating, and assisting in generating repeated false and misleading statements and information in violation of Plaintiff's due process and civil rights. The Plaintiff detailed these instances in her Amended Verified Complaint.

Defendants' goal was to find Plaintiff unfit to work, so that she could be terminated. Defendants wanted Plaintiff to be evaluated by Dr. Solomon, and did not tell her she could be assessed by her own doctor, because they wanted to rely solely on Dr. Solomon's opinion. Plaintiff relied upon the Defendants representations that the evaluation was routine, and that it was a BOCES policy due to the injuries that she had sustained, and is further required when an employee is out several times on Workers Compensation related injuries (¶40 Amended Verified Complaint). Moreover, the Plaintiff was advised that her time and attendance were the reasons for the evaluation (¶40 Amended Verified Complaint). On or about February 12, 2016, (before Plaintiff's evaluation with Dr. Solomon), Defendant Nekulak, admitted to the Plaintiff that she had already started an investigation against her with regard to her time and attendance, and the Plaintiff was removed from her teaching position and reassigned (¶44 Amended Verified Complaint). The letter

signed by Defendant Nekulak, in or around November, 2015, contained no statement indicating that Plaintiff had a right to bring counsel to the evaluation or retain an attorney. Had the Plaintiff been informed and made aware of that situation, she would have retained counsel and would not have been coerced into signing an unlawful HIPAA release presented by Dr. Solomon (¶44 Amended Verified Complaint). As such, Defendants fail in their attempt to argue that Plaintiff failed to plead any facts which state a claim for fraud.

**D. Tortious Interference Claim**

The Plaintiff's pleadings clearly states a claim for tortious interference. Following the Defendant's actions to fabricate disciplinary issues, to the present time and continuing, the Defendants have intentionally, maliciously and improperly interfered in the Plaintiff's ability to perform her duties as a teacher, without legal justification. Dr. Solomon and the Nassau BOCES Defendants collaborated and carried out their pretext in bad faith, animus and motivated by malevolent intent to purposefully cause harm to Plaintiff's career. Defendants' interference was intended to cause, and does cause harm to Plaintiff's status and reputation and ability to secure an administrative position.

In this regard, Defendants have erroneously provided the elements of a cause of action alleging tortious interference with contract, which is not what is being claimed by the Plaintiff. Tortious interference with **business relations** is a valid cause of action and "applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff, but for the intentional and wrongful acts of the defendant." See, *WFB Telecommunications v. NYNEX Corp.*, 188 AD2d 257; see, *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, at 196, 406 N.E.2d 445, 428 N.Y.S.2d 628, 1980 N.Y. LEXIS 2293; *Datlow v. Paleta Intl. Corp.*, 199 AD2d 362, 363. "In such an action '[t]he motive

for the interference must be solely malicious, and the plaintiff has the burden of proving this fact (72 NY Jur 2d, <u>Interference</u>, § 44, at 240)" (*John R. Loftus, Inc. v. White*, 150 AD2d 857, 860). In this case, the Plaintiff's cause of action in this regard contains adequate factual support to demonstrate that the interference is solely malicious sufficient to state a cause of action. A claim for tortious interference with prospective business relations does **not** require a breach of an existing contract. <u>See</u>, *NBT Bancorp. v. Fleet/Norstar Fin. Group*, 87 NY2d 614, 621, 664 NE2d 492, 641 NYS2d 581 [1996]. This standard is met where the interference with prospective business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party. <u>See</u>, *Carvel Corp. v. Noonan*, 3 NY3d 182, 190, 818 NE2d 1100, 785 NYS2d 359 [2004]; *Caprer v. Nussbaum*, 36 AD3d 176, 204, 825 NYS2d 55 [2006]. "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." <u>See</u>, *Guard-Life Corp.*, <u>supra</u>, (<u>quoting</u>, Restatement [Second] of Torts §§ 768, Comment e and 767, Comment c). As a general rule, the offending party's conduct must amount to a crime or an independent tort, as conduct that is neither criminal nor tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective business relations (<u>see</u>, *Carvel Corp.*, <u>supra</u>, [internal quotation marks omitted]). Here, contrary to the conclusion of the Defendants, the allegations in the Amended Verified Complaint establish the elements of tortious interference with prospective business relations.

### E. Negligence and Negligent Infliction of Emotional Distress Claims

Plaintiff has alleged that Defendants owed Plaintiff a duty and the breach of that duty caused Plaintiff's damages. <u>See</u>, *Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014]. All Defendants each individually, by and through its agents, servants and employees, actual and

ostensible, were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein, and continues to date.

The Administration at the BOCES school, knew or should have known and been familiar with the procedures for the timely and proper notice, investigation, and management of claims, and to adhere to the proper procedures and not violate the Plaintiff's due process rights. Instead, Plaintiff was unnecessarily subjected to harassment, ridicule, and unnecessary discipline, and the threat of losing her employment and potentially, her license. The pleadings contain sufficient specificity as to the details of their "outrageous and horrifying conduct." In order to support a claim for negligent infliction of emotional distress, Plaintiff is also required to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Murphy v. Am. Home Products Corp.*, 58 NY2d 293, 303 [1983]. Defendants' extreme and outrageous conduct in these circumstances has been clearly alleged, and thus shall survive a motion to dismiss." See, *Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004]. Plaintiff has clearly identified the duty owed to her by Defendants. See, *Santana*, supra. Erroneously substantiating false claims, subjecting Plaintiff to public admonishment and ridicule, and negatively affecting her status and means of employment is egregious, extreme, and outrageous. Defendants furthered a false narrative by inappropriately engaging Dr. Solomon and failing to advise the Plaintiff that she could be assessed by her own doctor, because they wanted to rely solely on Dr. Solomon's opinion and purposefully violating proper procedure and protocol without repercussion. Plaintiff has more than established that Defendants acted in a "grossly irresponsible manner without due

consideration for the standards ordinarily followed by responsible parties in their position." <u>See</u>, *Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975); <u>see</u> <u>also</u>, *Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007). As previously asserted, erroneously substantiating false claims, subjecting Plaintiff to public admonishment and ridicule, and negatively affecting her status and means of employment is egregious, extreme, and outrageous, and goes beyond all possible bounds of decency, and utterly intolerable in a civilized community. As a result, Plaintiff's claims in this regard, must stand.

**F. Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff has more than established that Defendants acted in a "grossly irresponsible manner without due consideration for the standards ordinarily followed by responsible parties in their position." <u>See</u>, *Chapadeau*, <u>supra</u>; <u>see</u> <u>also</u>, *Bloom v. Fox News of LA*, <u>supra</u>. As stated previously, herein, all Defendants each individually, by and through its agents, servants and employees, actual and ostensible, were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein. Moreover, Defendants erroneously argue summarily that under New York law, claims for intentional infliction of emotional distress may not be brought against a municipality. This argument must also fail, as this Court has previously permitted an analysis on the merits of such claims as against the NYCDOE. <u>See</u>, *Romero v. City of New York*, 839 F. Supp. 2d 588, 2012 U.S. Dist. LEXIS 36049, 2012 WL 899945.

Nonetheless, this argument also fails to consider those Defendants which fall within "any recognized orbit of duty upon which liability may be based." <u>See</u>, *Lauer v. City of New York*, 659

N.Y.S.2d 57, <u>citing</u>, *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 478 N.Y.S.2d 838, 467 N.E.2d 502; <u>see</u>, *Johnson v. State of New York*, 37 N.Y.2d 378, 383, 372 N.Y.S.2d 638, 334 N.E.2d 590; *Hecht v. Kaplan*, 221 A.D.2d 100, 105, 645 N.Y.S.2d 51; *Rivera v. Wyckoff Hgts. Hosp.*, 184 A.D.2d 558, 560, 584 N.Y.S.2d 648. In this regard, Plaintiff has sufficiently alleged a special relationship; she claims that Defendants were required to monitor, supervise and control. A special relationship giving rise to a duty of care can be created in three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; and, (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." <u>See</u>, *Valdez v. City of New York*, 936 NYS2d at 592; *Pelaez v. Seide*, 778 NYS2d 111, 117 (2004). Plaintiff has adequately alleged facts sufficient to demonstrate that she had a special relationship with municipal Defendants, such that they owed her a special duty. As previously asserted, erroneously substantiating false claims, subjecting Plaintiff to public admonishment and ridicule, and negatively affecting her status and employment is egregious, extreme, and outrageous, and goes beyond all possible bounds of decency, and utterly intolerable in a civilized community.

## **CONCLUSION**

Based on the foregoing arguments, the Plaintiff has demonstrated meritorious causes of action against each of the respective Defendants named herein, and as such, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss Plaintiff's Amended Verified Complaint, and any other requested relief, or in the alternative, grant leave to further amend the Amended Verified Complaint, if necessary, together with such other and further relief to Plaintiff as this Court deems just and proper.

Dated: Garden City, New York
      October 21, 2021

                            Respectfully submitted,

                            LAW OFFICES OF THOMAS F. LIOTTI, LLC
                            By: Thomas F. Liotti, Esq. (TL4471)
                            Attorneys for Plaintiff